UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>upon relation and for the use of the )<br>TENNESSEE VALLEY AUTHORITY, )<br>                                        )<br>        Plaintiff, )<br>                                        )<br>v. )<br>                                        )<br>AN EASEMENT AND RIGHT-OF-WAY )<br>OVER .098 ACRES OF LAND, MORE OR )<br>LESS, IN KNOX COUNTY, TENNESSEE, )<br>and JOYCE FRITTS, Trustee of the )<br>Joyce Fritts Family Trust, a Revocable Living )<br>Trust, )<br>                                        )<br>        Defendants. ) | No. 3:24-CV-37-DCLC-DCP |

## **MEMORANDUM AND ORDER**

This case is before the Court pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiff's Motion to Exclude Opinion Testimony of Appraiser Gregory A. Bonneville [Doc. 49]. Defendant Fritts responded in opposition to the motion [Doc. 69], and Plaintiff replied [Doc. 73]. The motion is ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a). For the reasons explained below, the Court **GRANTS** the motion [**Doc. 49**].

I. **BACKGROUND**

This is a partial takings case, wherein Plaintiff, United States of America upon the relation and for the use of Tennessee Valley Authority ("TVA"), condemned a permanent easement and right-of-way over Defendant Fritts's land in Knox County, Tennessee, in order to erect, operate, and maintain electric power transmission circuits and communication circuits [Doc. 1 ¶¶ 1, 3–4;

Doc. 1-1]. According to Plaintiff, Defendant Fritts "owns and resides on an improved 7.14-acre parcel of land" that its transmission line crosses (hereinafter, "Subject Property") [Doc. 50 p. 6 (footnote omitted)]. The only issue in this case is "just compensation" [Doc. 34 p. 3].

Defendant Fritts retained appraiser, Gregory A. Bonneville ("Mr. Bonneville"), who opined on the value of the Subject Property before the taking ("before-take opinion"), the value of the Subject Property after the taking ("after-take opinion"), and the amount of compensation owed for the property rights that were taken ("compensation opinion") [*See* Doc. 48-2].[1]

In arriving at his before-take opinion, Mr. Bonneville used the sales comparison approach and opined that the Subject Property's before-take value was $840,000 [*Id*. at 34]. Plaintiff does not seek to exclude this opinion in its motion [Doc. 50 p. 8].

With respect to his after-take opinion, Mr. Bonneville opined that the Subject Property was valued at $645,000 [Doc. 48-2 p. 44]. To arrive at this opinion, he divided the Subject Property into three units: (1) Tract north of TVA easement ("North Tract"), (2) TVA Easement, and (3) an area south of TVA easement ("Uneconomic Remnant") [Doc. 48-4 p. 11]. "He next assigned a functional percentage to each unit to account for changes in utility resulting from the taking" [Doc. 50 p. 9]. Mr. Bonneville found that the North Tract had 100% functionality; the TVA Easement had 20% functionality, so it was unfunctional by 80%; and the Uneconomic Remanent had 0% functionality [Doc. 48-4 p. 11]. His calculations follow:

| Tract | Acreage | Functionality | Area As Impacted |
|---|---|---|---|
| North Tract | 5.09 | 100% | 5.09 |
| TVA Easement | 0.99[2] | 20% | .20 |

---

[1] Mr. Bonneville produced a report dated September 16, 2024 [Doc. 48-2] and a Supplemental Report dated February 12, 2025 [Doc. 48-4]. Defendant Fritts states that in the Supplemental Report, Mr. Bonneville responds to Plaintiff's expert's criticisms [Doc. 69 p. 4]. Plaintiff submits that it is challenging both reports [Doc. 50 p. 8 n.3].

[2] Plaintiff claims that the easement is .98 acres [Doc. 50 p. 8 n.4].

| | | | |
|---|---|---|---|
| Uneconomic Remnant | 1.06 | 0% | .00 |
| Total | 7.14 | | 5.29 |

[*Id*.]. Mr. Bonneville next used the comparable sales method to value the 5.29-acres of useful land in the after-take condition [*Id*. at 12]. "He identified comparable sales of improved properties that were encumbered by transmission lines and adjusted those sales to account for differences in acreage, living square footage of the home, condition of the home, access to public roads," and so forth [Doc. 50 p. 10; *see also* Doc. 48-4 p. 12]. Using these comparison sales, Mr. Bonneville opined that the after-take value of the Subject Property at 5.29 acres was $645,000 [Doc. 48-2 p. 44].

Finally, to arrive at his compensation opinion, he subtracted the before-take value ($840,00) by the after-take value ($645,000), which results in $195,000 [*Id*.]. But he also considered value of compensation in three different ways and when "considering all the approaches and methods applied[,]" he opined that just compensation is $200,000 [*Id*.].

Plaintiff moves to exclude Mr. Bonneville's opinions about the after-take value and the amount of just compensation [Doc. 49]. First, Plaintiff argues that Mr. Bonneville did not use a before-and-after method because he did not value the same Subject Property before the taking that he valued after the taking and that his method violates the Unit Rule [Doc. 50 pp. 15–17]. Second, Plaintiff asserts the Mr. Bonneville's opinion that the Uneconomic Remnant has zero value is fundamentally flawed and contrary to law [*Id*. at 18]. Third, given these issues, Plaintiff claims that his opinion on just compensation is irrelevant and unreliable [*Id*.].

3

Defendant Fritts responds in opposition to the motion [Doc. 69]. She argues that Plaintiff's appraiser, James Turner, issued an unreliable report [*Id*. at 4–7].[3] Defendant Fritts states that Plaintiff mischaracterizes the case that it often cites [*Id*. at 8–10]. She submits that "[Mr.] Bonneville employed the concept of 'effective acreage' to reflect the real-world diminution in the [Subject] [P]roperty's utility resulting from [Plaintiff's] easement" [*Id*. at 10]. According to Defendant Fritts, "This approach is logical, mathematically consistent, and supported by published economic research" [*Id*.]. Defendant Fritts disagrees that Mr. Bonneville violated the Unit Rule [*Id*. at 11–14]. She further states that Mr. Bonneville's opinion regarding the value of the Uneconomic Remanent is sound [*Id*. at 14–17]. She contends that Plaintiff's challenges are for cross examination [*Id*. at 17–19]. In support of the response, Defendant Fritts filed the Declaration of Gregory A. Bonneville ("Bonneville Declaration") [Doc. 69-3].

Plaintiff filed a reply, maintaining that Mr. Bonneville's after-take valuation is not relevant because it does not comply with the before and after methodology [Doc. 73 pp. 5–7]. In addition, Plaintiff asserts that Mr. Bonneville improperly damaged the Uneconomic Remanent by 100% [*Id*. at 7–8]. It claims that Mr. Bonneville's after-take opinion double counted damages to the easement area [*Id*. at 11]. Finally, Plaintiff states that "[t]he miscellaneous errors in Defendant's [r]esponse and Mr. Bonneville's declaration are immaterial to resolving Plaintiff's motion" [*Id*. (emphasis omitted)].[4]

---

[3] Defendant Fritts "incorporates by reference [the] Motion to Exclude Opinion Testimony of Mr. James Turner" [Doc. 69 p. 5 (citing Doc. 58)]. The Court will address this matter separately.

[4] The parties raise various other issues in their briefs. For instance, Defendant Fritts references issues with Plaintiff's expert [Doc. 69 pp. 4–6] and also argues that certain individuals did not "waive[] signature on any transcripts at the depositions" [*Id*. at 6]. Plaintiff argues that Mr. Bonneville offered a supplemental declaration that is inadmissible [Doc. 73 pp. 8–9]. The Court need not resolve these issues to adjudicate Plaintiff's motion.

4

Case 3:24-cv-00037-DCLC-DCP   Document 118   Filed 07/21/25   Page 4 of 16
PageID #: 2433

## II. STANDARD OF REVIEW

"Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert*, 509 U.S. at 589). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.[5] The Supreme Court of the United States stated in *Daubert* that a district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589.

"Although *Daubert* centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized

---

[5] Rule 702 was amended on December 1, 2023, but the changes to the rule are not substantive. *Nash-Perry v. City of Bakersfield*, No. 118CV01512, 2023 WL 8261305, at *13 (E.D. Cal. Nov. 29, 2023). Rather, "[t]he amendment clarifies that the preponderance standard applies to the three reliability-based requirements added in 2000--requirements that many courts have incorrectly determined to be governed by the more permissive Rule 104(b) standard." Fed. R. Evid. 702 advisory committee's note to 2023 amendments.

5

or technical, as opposed to scientific, knowledge." *Rose v. Sevier Cnty.*, No. 3:08-CV-25, 2012 WL 6140991, at *4 (E.D. Tenn. Dec. 11, 2012) (citing *Kumho Tire Co.*, 526 U.S. at 138–39). "[A] party must show, by a 'preponderance of proof,' that the witness will testify in a manner that will ultimately assist the trier of fact in understanding and resolving the factual issues involved in the case." *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 970–71 (M.D. Tenn. 2002) (quoting *Daubert*, 509 U.S. at 593–94), *aff'd by* 89 F. App'x 927 (6th Cir. 2003). The party offering the expert has the burden of proving admissibility. *Daubert*, 509 U.S. at 592 n.10.

"District courts generally have 'considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" *Madej v. Maiden*, 951 F.3d 364, 374 (6th Cir. 2020) (quoting *Kumho Tire*, 526 U.S. at 152). Decisions by the district court are thus reviewed for an abuse of discretion. *See id.* (citing *Kumho Tire*, 526 U.S. at 142). "This deferential standard makes sense because *Daubert* establishes a 'flexible' test that considers many indicia of reliability[,]" and relevance will depend "on the particular science and the particular scientist before the court." *Id.* (citing *Kumho Tire*, 526 U.S. at 150).

### III. ANALYSIS

The Fifth Amendment to the United States Constitution provides that "private property [shall not] be taken, without just compensation." U.S. Const. amend. V. The Supreme Court has defined "just compensation" as "the fair market value of the property on the date it is appropriated." *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 10 (1984) (citation omitted). "Fair market value is determined by considering what a 'rational seller, willing but not obligated to sell, would take for the property, and what a rational buyer, willing but not obligated to buy, would pay for the property, and must take into account '[a]ll considerations that might fairly be brought forward and given substantial weight in bargaining between an owner willing to sell and

6

a purchaser desiring to buy.'" *Rover Pipeline, LLC v. 10.55 Acres of Land, More or Less, in Ashland Cnty.*, No. 5:17-CV-239, 2018 WL 4386024, at *3 (N.D. Ohio Sept. 14, 2018) (quoting *United States v. 104 Acres, More or Less, in Keeler Twp.* (*Van Buren*), 666 F. Supp. 1017, 1020 (W.D. Mich. 1987)). "[T]he landowner has the burden of proof on the issue of just compensation." *United States ex rel. Tennessee Valley Auth. v. A Temp. Right to Enter* (*A Temp. Right to Enter*), No. 414CV00085, 2017 WL 2559976, at *4 (E.D. Tenn. June 13, 2017) (citation omitted).

In a partial takings case, like the instant matter, "[t]he correct measure of compensation for an easement, as for any partial taking, is the difference in fair market value of the whole tract before and after the taking." *U.S. ex rel. Tennessee Valley Auth. v. 1.72 Acres of Land In Tennessee* (*1.72 Acres of Land In Tennessee*), 821 F.3d 742, 756 (6th Cir. 2016) (brackets in original) (quoting *United States of America ex rel. TVA v. Easements and Rights–of–Way over 6 Acres of Land,* 117 F. App'x 422, 423 (6th Cir. 2004)). This is known as the "before-and-after method[,]" which "has been widely adopted by other circuits." *1.72 Acres of Land In Tennessee*, 821 F.3d at 756 (citations omitted).

Mr. Bonneville states that he employed the before-and-after method to arrive at his opinions in this case [Docs. 48-2, 48-5]. At this time, Plaintiff does not challenge Mr. Bonneville's opinion on the before-take value [*See* Doc. 50 p. 8]. Instead, Plaintiff takes issue with how Mr. Bonneville arrived at his after-take opinion and the resulting compensation due.

### A. Mr. Bonneville's Effective Acreage Approach[6]

Plaintiff asserts, "Mr. Bonneville's after-take and compensation opinions should be excluded because he did not use either of the two 'before and after methods' required to value

---

[6] Plaintiff refers to Mr. Bonneville's method as the "functional use method" [Doc. 50 p. 15], but Defendant Fritts calls it the "effective acreage approach" [Doc. 69 p. 10]. The Court will generally call it the "effective acreage approach."

7

compensation in federal partial takings cases and because his [effective acreage approach] does not conform to generally-accepted appraisal methodology" [Doc. 50 p. 15]. According to Plaintiff, "there are two ways to prove compensation using the before and after method" [*Id.*]. It argues that "Mr. Bonneville did not use either method[,]" but "instead[, he] created his own 'functional use' methodology that valued only part of the [S]ubject [P]roperty after the taking" [*Id.* (citation omitted)]. Plaintiff claims that there are two primary issues with this approach [*Id.* at 15–17]. First, it contends that Mr. Bonneville "did not value the same property before the taking that he valued after the taking" [*Id.* at 15]. Plaintiff states that "[h]e instead valued 100% of the [S]ubject [P]roperty (7.14 acres) before the taking but valued only 75% of the [S]ubject [P]roperty (5.29 acres) after the taking" [*Id.* (footnote omitted)]. "[A]ny suggestion that it was unnecessary to value the remaining 25% of the [S]ubject [P]roperty (1.85 acres) after the taking because it had zero value[,]" Plaintiff contends, "is contrary to law and inconsistent with the landowner's continued use of that area" [*Id.* at 15–16]. For instance, Plaintiff states that Mr. Bonneville valued the Uneconomic Remanent as having zero value, despite Defendant Fritts continuing to use it as her driveway [*Id.* at 16].

Second, Plaintiff argues that Mr. Bonneville's effective acreage approach violates the Unit Rule [*Id.* at 17]. Stating that he "used a piecemeal approach that allowed him to impermissibly double count damages within the easement[,]" Plaintiff asserts that Mr. Bonneville "assigned different uses to different parts of the [S]ubject [P]roperty to determine that 80 percent of the easement was unusable (i.e., had zero value)" [*Id.*]. But Plaintiff adds that he also "used a comparable sales analysis to further damage the remaining 20 percent of usable easement area, and in doing so, double counted damages" [*Id.* (citations omitted)]. Plaintiff characterizes his effective acreage approach as unreliable and irrelevant [*Id.* at 18].

8

Defendant Fritts responds that Mr. Bonneville employed a valid methodology [Doc. 69 p. 10]. In support of her argument, she relies on an article that discusses effective usable acreage [*Id.* (citing Kevin McGee, *Specifying the Price Impacts of Utility Easements*, Dep't of Economics at the University of Wisconsin (Jan. 30, 2017))].[7] She contends that "[Mr.] Bonneville's use of effective acreage aligns with this market behavior, providing a credible basis for estimating the remainder value" [*Id.*]. "Instead, of 'substantial enjoyment,'" Defendant Fritts claims that she "is 'stuck' with a real estate tax bill, insurance bill, grass maintenance perpetually on 100% of the value of the property[,]because [Plaintiff] did not take 100% [of the Subject Property]" [*Id.*].

In addition, Defendant Fritts argues that Mr. Bonneville did not violate the Unit Rule [*Id.* at 11–14]. Defendant Fritts accuses Plaintiff of "trying to trip Mr. Bonneville up in his third deposition[,]" but she states that he "continue[d] to discuss 'utility' and 'equivalent area' in his responses" [*Id.* at 12]. According to Defendant Fritts, "[Mr.] Bonneville is talking about the utility value and explaining the pieces that are diminished so that he can make the appropriate adjustments to the comparable sales for the dissimilarities" [*Id.*]. She asserts:

> At no point did Mr. Bonneville value the 1.06-acre "remanent" or the easement area as standalone parcels. He maintained the contributory value across the entire 7.14-acre tract before and after the taking. His effective acreage analysis was a mathematical method to reflect diminished utility, not a violation of the Unit Rule.

[*Id.* at 13].

With respect to the Uneconomic Remanent, Defendant Fritts states that "[Mr.] Bonneville's opinion that the 1.06-acre uneconomic remnant had zero value after the taking is fundamentally sound and consistent with appraiser requirements" [*Id.* at 14]. She submits, "Analytical

---

[7] Plaintiff attached the article to its reply brief [*See* Doc. 73-1]. Moving forward, the Court will cite to the article using the CM/ECF stamp.

segmentation is standard practice in the sales comparison approach and is not prohibited by [Uniform Standards of Professional Appraisal Practice] or the Yellow Book when properly applied" [*Id*.]. She contends that "Plaintiff's challenges go to the weight of [Mr.] Bonneville's opinion and not to its admissibility" [*Id*. at 18 (citations omitted)].

Plaintiff replies that Mr. Bonneville's effective acreage approach does not comply with the before-and-after method [Doc. 73 pp. 5–7]. In addition, Plaintiff claims that this method double counts the damages [*Id*. at 11].

Plaintiff challenges Mr. Bonneville's effective acreage approach as unreliable and irrelevant. "[A]n opinion is 'reliable' from an evidentiary standpoint if it is 'valid' according to the discipline upon which it is based." *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 382 F. Supp. 3d 687, 697 (E.D. Mich. 2019) (citation omitted). And in determining whether an opinion is valid, "the Court's focus is on the principles and methodology, not the results." *Id*. An expert's testimony that is reliable "must be 'supported by appropriate validation—i.e., "good grounds," based on what is known.'" *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting *Daubert,* 509 U.S. at 590).

"Rule 702 guides the trial court by providing general standards to assess reliability: whether the testimony is based on 'sufficient facts or data,' whether the testimony is the 'product of reliable principals and methods,' and whether the expert 'has applied the principles and methods reliable to the facts of the case.'" *Id.* (quoting Fed. R. Evid. 702). In assessing reliability, the court may consider "(1) the testable nature of the hypotheses; (2) whether the methodology has been subject to peer review; (3) rate of error associated with the methodology; and (4) whether the methodology is generally accepted in the field." *Reynolds v. Freightliner LLC*, No. CIV. 05-70, 2006 WL 5249744, at *8 (E.D. Ky. June 21, 2006) (footnote omitted) (citing *Daubert*, 509 U.S. at 593–94).

These factors are not "a definitive checklist." *Kumho Tire Co.*, 526 U.S. at 138 (citation omitted). "The reliability step focuses on the 'methodology and principles' that form the basis for the testimony." *Ellipsis, Inc. v. The Color Works, Inc.*, 428 F. Supp. 2d 752, 757 (W.D. Tenn. 2006) (citation omitted).

Rule 702 also requires that the testimony "help the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Civ. P. 702. "This condition goes primarily to relevance." *Daubert*, 509 U.S. at 591. In order words, courts should determine whether the testimony "fit[s] the facts of the case[.]" *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (citation omitted).

The Court finds that Defendant Fritts has not shown that it is more likely than not that Mr. Bonneville's effective acreage approach is admissible under Rule 702. Generally, the value of property with an easement can be valued in two ways: (1) "the witness may value the entire property before and after the taking, or" (2) "he may . . . valu[e] the exact land covered by the easement before and after the taking and adding to this any incidental damages, or subtracting any incidental benefits, to the remainder of the property[.]" *Instructions to Comm'rs*, 61 F.R.D. 503, 516 (1974) (citations omitted). As noted above, in determining the after-take value, Mr. Bonneville divided the Subject Property into three units: (1) the North Tract, 5.09 acres, (2) TVA Easement, .99 acres, and (3) the Uneconomic Remanent, 1.06 acres [Doc. 48-4 p. 11]. During his deposition, he elaborated on his approach [*See* Doc. 69-4]. After dividing the Subject Property, he then determined the functional use of each unit after Plaintiff acquired the easement [*Id*. at 6]. He opined that the North Tract has 100% use, the TVA Easement has 20% use, and that the Uneconomic Remnant has 0% use [*Id*. at 6–8]. Mr. Bonneville therefore concludes that the Subject

11

Property that originally consisted of 7.14 acres only has 5.29 acres of functional use [*Id*. at 8; *see also* Doc. 48-4 p. 11].[8]

Next, he takes the Subject Property's remaining 5.29 acres and compares it to three other properties [Doc. 64-4 pp. 9–26; *see also* Doc. 48-4 p. 12]. With respect to the three comparable properties, he makes upward and downward adjustments to account for the differences in the three comparable properties to the Subject Property [Doc. 64-4 pp. 12–15; *see also id*. at 21 (acknowledging that he "used three comparable sales to estimate the value for those sales based upon adjustments that [he] applied consistently to bring them up to the quality and the value of the [S]ubject [P]roperty")]. He then arrived at the comparable properties' after-take value: (1) $700,000 for the first comparable, (2) $645,000 for the second comparable, and (3) $663,000 for the third comparable [Doc. 48-4 p. 12]. When asked during his deposition how he used the after-take values of the comparable properties to arrive at his after-take value of the Subject Property ($645,000), he stated that he "reconciled the three" [Doc. 69-4 p. 17]. Later, he acknowledged that it appears he gave the second comparable the most weight [*Id*. at 22].

Defendant Fritts argues that the effective acreage approach is "logical, mathematically consistent, and supported by published economic research" [Doc. 69 p. 10]. But the only published research she cites is an article written by Mr. McGee and published by the Department of Economics at the University of Wisconsin [Doc. 73-1]. Mr. McGee's article "is based on an

---

[8] He arrives at 5.29 acres as follows: 5.09 for the North Tract, .2 acres for the TVA Easement, and 0 acres for the Uneconomic Remnant [Doc. 48-4 p. 11]. Mr. Bonneville claims his analysis does not violate the Unit Rule but instead constitutes an analytical segmentation, which "is embedded and utilized throughout the appraisal process" [Doc. 69-3 p. 14]. "[But] the [U]nit [R]ule commands that property, whether or not it can be divided among real or imaginary lines, *not* be so divided and rather that the property at issue must be considered as a whole." *United States v. 4.620 Acres of Land, more or less, in Hidalgo Cnty.*, No. 7:20-CV-00154, 2022 WL 214636, at *3 (S.D. Tex. Jan. 25, 2022).

assumed data-generating process in which sellers and buyers adjust their asking and bid prices by adjusting what they perceive to be the net property acreage — i.e., the effective usable acreage, after accounting for any use loss associated with the dis-amenity" [*Id*. at 1]. "But Mr. Bonneville did not use the methodology proposed in the McGee article" [Doc. 73 p. 7]. Indeed, "[Mr.] McGee . . . analyzes large data sets using complex mathematical formulas, regression analysis, and logarithmic functions" [*Id*.]. More importantly, however, Defendant Fritts does not provide any "authority within the appraisal profession that recognizes [the effective acreage approach] as a generally accepted appraisal methodology" [*Id*. at 6]. Indeed, the Court has reviewed the Bonneville Declaration [*see* Doc. 69-3 p. 5], and he does not sufficiently explain how his method comports with the Uniform Standards of Professional Appraisal Practice ("USPAP") or any other generally recognized methodology.[9]

Further, Mr. Bonneville's calculation also double counted the damages from the easement. Defendant Fritts argues that at step one in his after-take opinion, he only discusses the utility value [Doc. 69 p. 12]. But in providing a utility value, he also reduced the Subject Property's acreage [*See* Doc. 69 pp. 7–9]. With respect to the easement, he provided it a 20% functional value, and therefore, reduced its acreage by 80% [Doc. 48-4 p. 11]. He then "damaged the easement a second time by damaging the easement acreage that retained its functional utility by another 20.69 percent" [Doc. 73 p. 11 (citation omitted)]. Indeed, during his deposition, he acknowledged that he "made the adjustments to [his] comparable sales to bring them up to the 5.29 acres that [he] deemed functional in the after condition" [Doc. 69-4 p. 24]. *See United States Upon Rel. of*

---

[9] In his declaration, Mr. Bonneville used an "alternative technique" to "indicate[] an appropriate compensation for the TVA acquisition of [Defendant] Fritts[']s tract" [Doc. 69-3 p. 48]. He states that he "proved with straight up Federal Rule methodology[,] this is what the compensation should be" [*Id*.]. His new compensation amount ($240,000), however, is different than his previous opinion ($200,000) [*Id*.].

13

*Tennessee Valley Auth. v. Easements & Rts.-of-Way Over 3.94 Acres of Land, More or Less, in DeSoto Cnty.*, 701 F. Supp. 3d 500, 513 (N.D. Miss. 2023) (excluding expert's testimony as unreliable because he double counted the damages); *United States upon relation of Tennessee Valley Auth. v. Easement & Right-of-Way Over .098 Acres of Land, More or Less, in Knox Cnty.*, No. 3:24-CV-54, 2025 WL 1145967, at *6 (E.D. Tenn. Mar. 14, 2025) (holding the same).

In his declaration, Mr. Bonneville claims that his method does not double count the damages [Doc. 69-3 p. 41]. He states, "To demonstrate, the validity of my method, I will redo the sales comparison grid for the impacted after value, without using the effective acreage" [*Id*.]. But as Plaintiff points out, "His new sales comparison grid uses different variables, assigns different values to other variables than his original grid, and does not produce the same conclusions" [Doc. 73 p. 9 (citing Doc. 69-3 p. 42)]. Further, "[t]hose differences . . . reduce the value of comparable sale 2 by $13,522 (from $645,000 to $631,478)" [*Id*.].

For the reasons stated above, the Court excludes Mr. Bonneville's effective acreage approach.[10]

### B. Uneconomic Remanent

Plaintiff argues that "Mr. Bonneville improperly designated 1.06-acres of the Subject Property as an economic remnant having zero value" [Doc. 50 p. 18]. It disputes Mr. Bonneville's conclusion because "the 1.06-acre remnant has significant value because it provided the only means of ingress and egress between Buttermilk Road and Defendant's home" [*Id*. (citation omitted)]. According to Plaintiff, "Mr. Bonneville's failure to value the 1.06-acre remnant has the practical consequence of improperly deflating his after-take value" [*Id*.].

---

[10] But even if the Court did not exclude Mr. Bonneville's effective acreage approach, the Court would exclude his after-take value opinion for the reasons set forth below.

Defendant Fritts responds that "[Mr.] Bonneville's opinion that the 1.06-acre uneconomic remnant had zero value after the taking is fundamentally sound and consistent with appraiser requirements" [Doc. 69 p. 14]. Defendant Fritts acknowledges that she still uses the driveway that crosses the Uneconomic Remanent [*Id*. at 14–15]. "[She] takes exception to the statement that [she] retains the fee in the remnant" because (1) "the deed is restricted to only allow residential use[,]" (2) "[Plaintiff] has the easement right to cut danger trees in the front remnant[,]" (3) "[Plaintiff] uses the driveway and damages it at any time it wants[,]" and (4) "the front acreage due to its slope, proximity to the road, and setback requirements up to 50 feet from the center o[f] the road put a residency within approximately 150' of the [high voltage transmission line]" [*Id*.].

Plaintiff replies that "Defendant Fritts is wrong" [Doc. 73 p. 7]. It asserts that her argument is inconsistent with Tennessee law and federal condemnation principles [*Id*. at 7–8].

Generally, in considering *Daubert* inquiries, the Court's focus is on the "principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 595. Even so, "That is not to say that a significant error in application will never go to the admissibility, as opposed to the weight, of the evidence." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530.

The Court finds that Defendant Fritts has not established her burden in showing this testimony is admissible under Rule 702. "[W]here only an easement is taken, the fact that the fee remains in the landowner must be taken into consideration, the entire fee or rental value not being recoverable." *United States v. 2,648.31 Acres of Land, More or Less, in Ctys. of Charlotte & Halifax*, 218 F.2d 518, 523 (4th Cir. 1955) (internal quotation marks omitted). But in determining the after-take value, Mr. Bonneville opined that the Uneconomic Remnant, which is 1.06 acres, had no functional value, and therefore, he reduced it to 0 acres [Doc. 48-4 p. 11]. And Defendant

15

Fritts admits she still uses the Uneconomic Remnant because her driveway crosses it [Doc. 68 pp. 14–15].

Defendant Fritts "takes exception to the statement that [she] retains the fee in the remnant[,]" claiming that "[t]he fact that [she] continues to use the driveway across the remnant does not negate the dramatic loss of market utility caused by the burden of [Plaintiff's] easement, the real estate taxes, insurance and maintenance as well as the future damages to the driveway through the remnant from [Plaintiff's] vehicles" [Doc. 69 p. 15]. Even so, "Mr. Bonneville's failure to value the 1.06-acre remnant has the practical consequence of improperly deflating his after-take value" [Doc. 50 p. 18]. *See United States v. 0.012 Acres, More or Less, Situated in Lexington Cnty., S.C.*, No. 3:23-CV-1733, 2025 WL 869681, at *6 (D.S.C. Jan. 8, 2025) (excluding expert testimony because the expert did not value the property correctly).

Based on the above, the Court excludes Mr. Bonneville's opinion that the Uneconomic Remanent has 0% functionality.

## IV. CONCLUSION

Given the findings above, the Court excludes Mr. Bonneville's resulting just compensation opinion. The Court therefore **GRANTS** Plaintiff's Motion to Exclude Opinion Testimony of Appraiser Gregory A. Bonneville [**Doc. 49**].

**IT IS SO ORDERED.**

ENTER:

_____
Debra C. Poplin
United States Magistrate Judge