UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, upon relation and for the use of the TENNESSEE VALLEY AUTHORITY, <br><br> Plaintiff, <br><br> v. <br><br> AN EASEMENT AND RIGHT-OF-WAY OVER .098 ACRES OF LAND, MORE OR LESS, IN KNOX COUNTY, TENNESSEE, and JOYCE FRITTS, Trustee of the Joyce Fritts Family Trust, a Revocable Living Trust, <br><br> Defendants. | No. 3:24-CV-37-DCLC-DCP |

## MEMORANDUM AND ORDER

This case is before the Court pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Defendant Fritts's Motion to Exclude Opinion Testimony of James O. Turner and Richard A. Crook [Doc. 58]. Plaintiff responded in opposition to the motion [Doc. 70], and Defendant Fritts filed a reply [Doc. 84].[1] The motion is ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a). For the reasons explained below, the Court **DENIES** the motion [**Doc. 58**].

---

[1] Plaintiff and Defendant Fritts filed consolidated filings [Docs. 70 & 84] that also address Defendant Fritts's Motion to Exclude Plaintiff's Witnesses Included in its Rule 26 Disclosures Cook [Doc. 56]. The Court will adjudicate that motion separately.

## I. BACKGROUND

This is a partial takings case, wherein Plaintiff, United States of America upon the relation and for the use of the Tennessee Valley Authority ("TVA"), condemned a permanent easement and right-of-way over Defendant Fritts's land in Knox County, Tennessee, in order to erect, operate, and maintain electric power transmission circuits and communication circuits [Doc. 1 ¶¶ 1, 3–4; Doc. 1-1]. According to Plaintiff, Defendant Fritts "owns and resides on an improved 7.14-acre parcel of land" that its transmission line crosses (hereinafter, "Subject Property") [Doc. 50 p. 6 (footnote omitted)]. The parties disagree on the size of Plaintiff's easement [Doc. 59 p. 2]. The only issue in this case is "just compensation" [Doc. 34 p. 3].

On July 16, 2024, Plaintiff identified Richard A. Crook ("Mr. Crook"), the managing director for Integra Realty Resources Nashville & East Tennessee ("IRR"), as an expert witness [Doc. 57-2 p. 1]. Mr. Crook appraised the Subject Property and offered opinions on the before and after take value and the amount of just compensation due [*Id.*].

On October 11, 2024, Plaintiff disclosed James Turner ("Mr. Turner") with BBG Real Estate Services ("BBG") [Doc. 70-2 p. 1]. Mr. Turner prepared a rebuttal report that addresses the appraisal by Defendant Fritts's expert, Gregory A. Bonneville ("Mr. Bonneville") [*Id.*].

Defendant Fritts moves to exclude Mr. Crook and Mr. Turner under Rules 701 through 706 of the Federal Rules of Evidence [Doc. 58].[2] For grounds, she argues that Mr. Crook and Mr. Turner have a conflict of interest because they worked for the same employer, which they failed

---

[2] Throughout her filings, Defendant Fritts references Wayne Underwood, Plaintiff's other appraiser [*See, e.g.*, Doc. 59 pp. 2, 14; Doc. 84 pp. 10–11]. Mr. Underwood signed Mr. Crook's appraisal [Doc. 60 p. 7]. She claims that he "did not follow through with the before and after Federal Rule[,]" [Doc. 59 p. 14], he lacks independence, and he has a conflict of interest [Doc. 84 pp. 10–11]. But she does not request that the Court exclude him from testifying [*See* Docs. 58 & 84]. Regardless, the Court's findings below would apply to Mr. Underwood.

2

to disclose, and they received legal advice from Plaintiff [Doc. 59 pp. 6–9]. She claims that Mr. Turner is not qualified and failed to provide an opinion on value [*Id.* at 9–11]. Defendant Fritts asserts that Mr. Crook's appraisal fails the Unit Rule standard espoused by Mr. Turner [*Id.* at 14]. She asks the Court to rule that the testimony of both Mr. Turner and Mr. Crook is not reliable or relevant, and she further requests that the Court grant her "fees, costs, and expenses to uncover the nefarious nature of the relationships, errors, omissions, and coverups of the relationships related to Mr. Turner's review report and to Mr. Crook's appraisal" [*Id.* at 14–15].[3]

Plaintiff responds that Mr. Turner and Mr. Crook have no conflict of interest, and it denies that they were employed by the same company while they worked on this case [Doc. 70 pp. 14–15]. In addition, it contends that Defendant Fritts's challenges to Mr. Turner's qualifications go to the weight of his opinion and not to its admissibility [*Id.* at 15–16]. Plaintiff states that Mr. Turner is not required to produce an opinion on value [*Id.* at 16–17]. Further, it argues that "Mr. Crook properly applied the alternative methodology for conducting the before and after method" [*Id.* at 17–18].

Defendant Fritts replies that Plaintiff did not respond to the other conflicts that she raised in her motion [Doc. 84 pp. 10–13]. She contends that the "public facts . . . prove" that Plaintiff's appraisers have conflicts of interests [*id.* at 13], and she claims that Mr. Turner, Mr. Crook, and their employers have conflicts of interest [*Id.* at 15–17]. She maintains that Mr. Turner is not

---

[3] Defendant Fritts also claims that Mr. Turner erroneously relies on the Yellow Book and confuses the Unit Rule [Doc. 59 pp. 12–14]. She does so in the context of supporting Mr. Bonneville's opinions [*See id.*]. Given that the Court has excluded Mr. Bonneville's after take and just compensation opinions, the Court need not address these issues [Doc. 118].

Citing to Doc. 48, Defendant Fritts states that Plaintiff filed another declaration by Mr. Turner that adds new opinions [Doc. 59 p. 11]. Given that, she argues, the opinions should be disregarded [*Id.*]. She does not explain what new opinions Mr. Turner offers.

3

qualified and states that he was required to provide an opinion on value [*Id.* at 18–24]. With respect to Mr. Crook, Defendant Fritts states that she is limiting her objections to his conflict of interest [*Id.* at 24].[4]

## II. STANDARD OF REVIEW

"Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert*, 509 U.S. at 589). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.[5] The Supreme Court of the United States stated in *Daubert* that a district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any

---

[4] Given that, the Court need not address Defendant Fritts's argument that Mr. Crook did not properly apply the Unit Rule.

[5] Rule 702 was amended on December 1, 2023, but the changes to the rule are not substantive. *Nash-Perry v. City of Bakersfield*, No. 118CV01512, 2023 WL 8261305, at *13 (E.D. Cal. Nov. 29, 2023). Rather, "[t]he amendment clarifies that the preponderance standard applies to the three reliability-based requirements added in 2000--requirements that many courts have incorrectly determined to be governed by the more permissive Rule 104(b) standard." Fed. R. Evid. 702 advisory committee's note to 2023 amendments.

4

Case 3:24-cv-00037-DCLC-DCP  Document 119  Filed 07/21/25  Page 4 of 15
PageID #: 2449

and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589.

"Although *Daubert* centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge." *Rose v. Sevier Cnty.*, No. 3:08-CV-25, 2012 WL 6140991, at *4 (E.D. Tenn. Dec. 11, 2012) (citing *Kumho Tire Co.*, 526 U.S. at 138–39). "[A] party must show, by a 'preponderance of proof,' that the witness will testify in a manner that will ultimately assist the trier of fact in understanding and resolving the factual issues involved in the case." *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 970–71 (M.D. Tenn. 2002) (quoting *Daubert*, 509 U.S. at 593–94), *aff'd by* 89 F. App'x 927 (6th Cir. 2003). The party offering the expert has the burden of proving admissibility. *Daubert*, 509 U.S. at 592 n.10.

"District courts generally have 'considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" *Madej v. Maiden*, 951 F.3d 364, 374 (6th Cir. 2020) (quoting *Kumho Tire*, 526 U.S. at 152). Decisions by the district court are thus reviewed for an abuse of discretion. *See id.* (citing *Kumho Tire*, 526 U.S. at 142). "This deferential standard makes sense because *Daubert* establishes a 'flexible' test that considers many indicia of reliability[,]" and relevance will depend "on the particular science and the particular scientist before the court." *Id.* (citing *Kumho Tire*, 526 U.S. at 150).

### III. ANALYSIS

The Court does not find Mr. Turner's and Mr. Crook's alleged conflicts constitute grounds for exclusion. The Court further finds Mr. Turner qualified and that he was not required to produce an opinion on value.

5

A. **Alleged Conflicts**

Defendant Fritts asserts that Mr. Turner and Mr. Crook have a conflict of interest and that they failed to disclose this conflict in violation of Standards 2, 3, and 5 of the Uniform Standards of Professional Appraisal Practice ("USPAP") [Doc. 59 pp. 6–9]. First, she states that she served subpoenas and that she received "[three] very similar looking and similar legal objections from [Plaintiff], Mr. Turner, and Mr. Crook" [*Id.* at 7]. She contends that Plaintiff providing legal advice to its appraisers is a conflict of interest [*Id.*]. Second, Defendant Fritts asserts that "Mr. Turner's listing or profile on the Appraisal Institute website[] shows his address as [IRR], 617 Renaissance Way, Ridgeland MS, 39157 and IRR's phone number" [*Id.*]. She submits that he uses IRR's address on his Tennessee license [*Id.*]. According to Mr. Turner's LinkedIn profile, Defendant Fritts states that he continues to work at IRR, although he failed to reference that in his qualifications [*Id.*]. This is a conflict of interest, Defendant Fritts claims, because "Mr. Crook also works for IRR" [*Id.* at 8].

Plaintiff responds that "Mr. Turner and Mr. Crook have no conflict of interest in their works for IRR" [Doc. 70 p. 14]. It asserts, "The two do not work for the same employer, and there is no business relationship between them" [*Id.*]. "Most importantly," Plaintiff states that "for purposes of the motion to exclude their testimony, the two had different appraisal assignments" [*Id.*]. In support of its position, Plaintiff filed the Second Declaration of James O. Turner [Doc. 70-4].

According to Mr. Turner,

> 2. Prior to August of 2021 I had a contractual relationship, akin to a franchise agreement, with Integra Realty Resources ("IRR"), whereby a limited liability company that I previously owned was granted access to IRR's proprietary software and data. That relationship ended in 2021 when BBG, Inc. acquired my business, and at no point during the pendency of this federal condemnation lawsuit have I

6

>    contracted with, been employed by, or had a business relationship with IRR.
>
> 3. My work in this case is limited to my review of appraisal reports prepared by the landowner's appraiser, Mr. Gregory A. Bonneville. I did not consult with Richard A. Crook in my review of Mr. Bonneville's appraisal, and I have not reviewed Mr. Crook's report or been informed of his opinions in this case.
>
> 4. I became aware through my review of Defendant's motion, that my LinkedIn account incorrectly indicated that I was currently employed by IRR. I have since corrected that social media account to accurately indicate my current employment with BBG and my employment history . . . and I have begun a review of my other professional and personal social media accounts to update and correct outdated references to IRR.

[*Id*. ¶¶ 2–4].

Defendant Fritts filed a reply, stating that Plaintiff has not disputed that there is a conflict of interest because its appraisers "accept[] and use[] legal advice from Plaintiff and [its] [a]ttorney[]s" [Doc. 84 p. 11]. According to Defendant, "[she] received three eyebrow raising letters of objection [to her subpoenas]—that were substantially the same" [*Id*.]. In addition, she disputes Plaintiff's claim that there is no conflict of interest between Mr. Turner and Mr. Crook and notes that the entities that employ them also have a conflict of interest [*Id*. at 12–18]. For instance, she claims that Mr. Turner uses IRR's address, Mr. Turner and BBG use IRR's telephone number, and there are relationships between IRR, Integrated Right of Way ("IROW"),[6] BBG, Mr. Crook, Mr. Turner, and Mr. Underwood [*Id*. at 13–14]. She contends that Mr. Turner and Mr. Crook worked on a different matter "contemporaneously with this case" [*Id*. at 14]. She questions the veracity of Mr. Turner's statements in his second declaration [*Id*. at 16–17]. In addition, she

---

[6] According to Defendant Fritts, IROW is Mr. Turner's former company [Doc. 84 pp. 15–16].

7

submits that "[while] it is unclear what other posts and whitewashing of Mr. Turner's LinkedIn has been changed[,]" she asserts he has posted recently and that he is required from "a professional ethics perspective" to "update [any] misrepresentations" [*Id*. at 17].

Defendant Fritts moves to exclude Mr. Turner and Mr. Crook, claiming that their opinions are not relevant or reliable. "Rule 702 guides the trial court by providing general standards to assess reliability: whether the testimony is based on 'sufficient facts or data,' whether the testimony is the 'product of reliable principals and methods,' and whether the expert 'has applied the principles and methods reliably to the facts of the case.'" *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting Fed. R. Evid. 702). In assessing reliability, the court may consider "(1) the testable nature of the hypotheses; (2) whether the methodology has been subject to peer review; (3) rate of error associated with the methodology; and (4) whether the methodology is generally accepted in the field." *Reynolds v. Freightliner LLC*, No. CIV. 05-70, 2006 WL 5249744, at *8 (E.D. Ky. June 21, 2006) (footnote omitted) (citing *Daubert*, 509 U.S. at 593–94). These factors are not "a definitive checklist." *Kumho Tire Co.*, 526 U.S. at 138 (citation omitted). "The reliability step focuses on the 'methodology and principles' that form the basis for the testimony." *Ellipsis, Inc. v. The Color Works, Inc.*, 428 F. Supp. 2d 752, 757 (W.D. Tenn. 2006) (citation omitted).

Rule 702 also requires that the testimony "help the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Civ. P. 702. "This condition goes primarily to relevance." *Daubert*, 509 U.S. at 591. In order words, courts should determine whether the testimony "fit[s] the facts of the case[.]" *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (citation omitted).

Defendant Fritts does not address this analysis. Instead, she claims that Plaintiff's expert witnesses have a conflict because of their relationship with Plaintiff and its counsel and the

8

relationship they have with one another, including their businesses. She identifies a list of their purported failures to comply with the USPAP and other ethical obligations [*See* Doc. 84-4]. While she frames her objections in terms of reliability and relevancy, it appears her objection is one of credibility. *See Salerno v. Fam. Heritage Life INS. Co.*, No. 1:23-CV-01419, 2025 WL 843387, at *3 (N.D. Ohio Mar. 18, 2025) ("The conflict of interest that Plaintiffs allege is the sort of conflict which attacks the credibility of [the expert] as an expert witness, not his testimony's admissibility."). "As such, the Court is mindful that its gatekeeper role "is not intended to supplant the adversary system or the role of the jury." *Kiker v. SmithKline Beecham Corp.*, No. 2:14-CV-2164, 2016 WL 8189286, at *12 (S.D. Ohio Dec. 15, 2016) (quoting *Wellman v. Norfolk & W. Ry. Co.*, 98 F. Supp. 2d 919, 924 (S.D. Ohio 2000)).

But further, the Sixth Circuit and courts within this circuit have declined to exclude expert witnesses based on conflicts. *See Cole v. Reader's Digest Sales & Servs., Inc.*, 139 F. App'x 707, 708 (6th Cir. 2005) (declining to exclude expert that was married to the plaintiff, noting that the conflict "goes to the weight of the evidence, not its admissibility"); *Evans v. Novolex Holdings, LLC*, No. CV 20-98, 2024 WL 5275558, at *3 (E.D. Ky. Mar. 25, 2024) (declining to exclude the expert who had a direct financial stake in the litigation, noting "it would be obvious to any finder of fact what [the p]laintiff stands to benefit if he prevails in this litigation and the finder of fact can weigh what effect that might have on [the p]laintiff's credibility as an expert witness"). Indeed, the "rejection of expert testimony is the exception, rather than the rule[.]" *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530 (quoting Fed. R. Civ. P. 702 advisory committee's note, 2000 amendment). Any concerns that Defendant Fritts has about Mr. Turner or Mr. Crook can be addressed through cross-examination and contrary evidence. *See Daubert*, 509 U.S. at 596

9

Case 3:24-cv-00037-DCLC-DCP   Document 119   Filed 07/21/25   Page 9 of 15
PageID #: 2454

(finding that the traditional and appropriate means of attacking shaky but admissible evidence is cross examination, contrary evidence, and careful instruction on the burden of proof).

The Court therefore declines to exclude Mr. Turner and Mr. Crook on this basis.

### B. Mr. Turner's Qualifications

Defendant Fritts claims that Mr. Turner is not qualified as an expert to review appraisals [Doc. 59 pp. 9–10]. She argues that he is not a certified USPAP instructor [*Id.* at 9 (citation omitted)]. Defendant Fritts states that according to the Appraisal Institute website, Mr. Turner has not completed any continuing education programs [*Id.*]. She submits that "Nick Tillema, unrelated to this case, by comparison, has a continuing education profile that is what you would expect of an expert" [*Id.* (citations omitted)]. In addition, she disputes Mr. Turner's claim that the subject frontage is level, and states that "[i]t is clear by walking on Buttermilk [road]," the property is not level [*Id.* at 10].

Plaintiff responds that "Defendant [Fritts] cites no legal or appraisal authority imposing . . . a requirement [that Mr. Turner must be a certified USPAP instructor]" [Doc. 70 p. 15]. It contends that whether other appraisers "may have superior credentials" does not mean that Mr. Turner is not qualified" [*Id.* at 16]. Plaintiff relies on USPAP Standard 3, "establishing the requirements for developing and communicating an appraisal review[,]" to support its argument [*Id.*]. In addition, Plaintiff states that the "Yellow Book requirements do not include a Certified Yellow Book Instructor Designation" [*Id.* (citation omitted)]. Plaintiff claims Mr. Turner is qualified [*Id.*].

Defendant Fritts acknowledges that the USPAP does not require an appraiser to have an instructor credential [Doc. 84 p. 18]. But she argues that he does not have the necessary

10

qualifications to meet the USPAP requirements [*Id.*]. "[She] challenges Mr. Turner's competency" [*Id.* at 19].[7]

Rule 702 requires that experts have "knowledge, skill, experience, training, or education[.]" Fed. R. Evid. 702. The United States Sixth Circuit Court of Appeals has explained that "[t]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994). "[Courts] take a liberal view of what 'knowledge, skill, experience, training, or education' is sufficient to satisfy the requirement." *Bradley v. Ameristep, Inc.*, 800 F.3d 205, 209 (6th Cir. 2015) (quoting *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000)). "Whether a proposed expert's experience is sufficient to qualify the expert to offer an opinion on a particular subject depends on the nature and extent of that experience." *United States v. Cunningham*, 679 F.3d 355, 379 (6th Cir. 2012) (citations omitted).

The Court finds Mr. Turner qualified to render his opinions [*See* Doc. 48-1]. He has real estate appraiser licenses in multiple states, including Tennessee [*Id.* at 1]. In addition, he has "experience in the valuation of the right of way, office buildings (CBD and suburban), warehouse/distribution, hotels and motels, vacant land, and special purpose properties" [*Id.*]. Mr. Turner states that he has "completed multiple Right-Of-way acquisition appraisals for proposed and existing roadways and public easements" [*Id.*]. Defendant Fritts objects to his qualifications

---

[7] The Court observes that many of Defendant Fritts's arguments relate to her expert, Mr. Bonneville [Doc. 84 pp. 19–20]. The Court has already addressed the challenges to his testimony [*see* Doc. 118], and it need not revisit these issues. Further, she claims that her expert disputes Mr. Turner's factual basis of the opinions [Doc. 84 pp. 19–20]. To the extent this is not moot, this challenge goes to the weight of the evidence, and not to its admissibility. *See Daniels v. Erie Ins. Grp.*, 291 F. Supp. 3d 835, 840 (M.D. Tenn. 2017) ("[T]he court will not exclude expert testimony 'merely because the factual bases for an expert's opinion are weak.'" (quoting *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 729 (6th Cir. 2012)).

11

because he is not certified as an USPAP instructor, but she later acknowledges this is not a requirement under the USPAP [*See* Doc. 84 p. 18; *see also* Doc. Doc. 70-5 (outlining the requirements for developing and communicating an appraisal review). In addition, while she claims he has not recently attended continuing education programs, the Court finds this does not render him unqualified.

The Court therefore declines to exclude Mr. Turner on the basis that he is unqualified.

### C. Mr. Turner's Scope of Work

Defendant Fritts argues, "Mr. Turner is reporting a value by indicating a direction in value or the relationship to Mr. Bonneville's value" [Doc. 59 p. 10 (citation omitted)]. "By doing so," she asserts that Mr. Turner has obligated himself to follow through and meet the appraisal standards by completing, to appraisal standards and presenting all of the analysis, specific to where he disagrees to the parts of Mr. Bonneville's analysis" [*Id*.]. In support of her argument, she relies on Standard 3-3(c) of the USPAP, and she points to examples where Mr. Turner opines on Mr. Bonneville's values [*Id*. (citations omitted)].

Plaintiff responds that Mr. Turner was not required to produce an opinion on value [Doc. 70 p. 16]. It contends that Standard 3-3(c) of the USPAP does not apply [*Id*.]. Because he was performing an appraisal review, and not an appraisal, Plaintiff argues that Standard 3-2 of the USPAP applies to Mr. Turner's scope of work [*Id*. at 17].

Defendant Fritts maintains that "Mr. Turner was required to produce an opinion of value as part of his review of Mr. Bonneville's report" [Doc. 84 p. 20]. She states that Mr. Turner failed to follow the standards "when he bridged over into the appraisal stage" [*Id*. at 20–21]. She acknowledges that "[Standard] 3[-]3(c) does not say he has to develop his own value[,] but if he does cross the bridge into the appraisal stage, then [he] has to follow through and do an appraisal

12

according to standards (1 to 4)" [*Id*. at 21 (emphasis omitted)]. Defendant Fritts contends, "By stating a direction of value and/or relationship to Mr. Bonneville's value, Mr. Turner crosses the bridge and is obligated to follow through and meet appraisal standards" [*Id*.].

Mr. Turner is Plaintiff's rebuttal expert, who "comment[ed] on the reasonableness of the value conclusion and the appraisal's compliance with the . . . []USPAP[], Uniform Standards for Federal Land Acquisitions (USFLA), and the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (Uniform Act)" [Doc. 48-3 p. 2]. He opines that Mr. Bonneville miscalculated and understated the adjustments for size and that he did not consider "adjustments for location, topography, view[,] and development potential" [*Id*. at 16]. In a declaration, Mr. Turner states that Mr. Bonneville failed to consider the retained value in the uneconomic remanent, which "artificially deflated his after-take valuation and consequently artificially inflated his just compensation opinion" [Doc. 48 p. 4]. In addition, Mr. Turner claims that Mr. Bonneville "undervalued the [S]ubject [P]roperty in the after condition and overvalu[ed] the amount of compensation owed for the easement rights that were taken" [*Id*. at 6]. He concludes, "The opinions and conclusions contained in the Bonneville Appraisal are misleading, incomplete, and inaccurate, and therefore unreliable for the reasons stated herein and in my appraisal review report" [*Id*.].

Defendant Fritts argues that Mr. Turner's above opinions do not comply with Standard 3-3(c) of the USPAP. She emphasizes the definition of an "appraisal" pursuant to the USPAP, which provides that "[a]n appraisal is numerically expressed as a specific amount, as a range of numbers, or as a relationship (e.g., not more than, not less than) to a previous value opinion or numerical benchmark" [Doc. 84 p. 21 (citations omitted)]. And by Mr. Turner opining that Mr. Bonneville understated, undervalued, and artificially deflated certain items, Defendant Fritts states that he

13

appraised the Subject Property [*Id.*].  But Standard 3-3(c) only applies "[w]hen the assignment includes the reviewer developing his or her own opinion of value or review opinion" [Doc. 70-5 p. 7].  Mr. Turner's criticisms do not expand the scope of his work into an appraisal.  And as Plaintiff points out, Mr. Turner's scope of work comports with Standard 3-2 of the USPAP, which relates to an appraiser's review [*Id.* at 5–7].  Advisory Opinion Op. 20 allows an appraisal review to address "the quality of work under review[,]" which "can include addressing its completeness, relevance, appropriateness, and reasonableness" [Doc. 70-8 p. 1].

This also comports with case law.  "A rebuttal expert, by nature, criticizes the methodology and/or opinions of another.  There is no requirement that a rebuttal expert himself offer a competing analysis; his opinions may properly concern criticizing that presented by another party." *Medidata Sols., Inc. v. Veeva Sys., Inc.*, No. 17 CIV. 589, 2022 WL 576089, at *2 (S.D.N.Y. Feb. 25, 2022) (quoting *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 29 (S.D.N.Y. 2020)); *see also EEOC v. Tepro, Inc.*, 133 F. Supp. 3d 1034, 1047 (E.D. Tenn. 2015) ("The Court agrees with [the defendant] that [its expert] is not required to conduct independent statistical analysis in his role as a rebuttal expert.  Instead, [the expert's] rebuttal may properly respond to the scope of [the plaintiff's] original expert opinion and reports."); *TERA II, LLC v. Rice Drilling D, LLC*, No. 2:19-CV-2221, 2024 WL 621002, at *14 (S.D. Ohio Feb. 14, 2024) ("Contrary to [the] [p]laintiffs' assertions, Mr. Watson and Ms. Adair, as [the d]efendants' rebuttal witnesses, are not required to suggest alternate theories of damages or conduct independent damages calculations; instead, they are entitled to criticize Mr. Herzing's damages calculations." (citations omitted)); *Rover Pipeline, LLC v. 1.23 Acres of Land, More or Less, Permanent Easement*, No. 17-CV-10365, 2018 WL 3322995, at *15 (E.D. Mich. July 6, 2018) ("It is well-settled that rebuttal experts are not required to independently assess the fact in issue." (citations omitted)); *CDA of*

*America Inc. v. Midland Life Ins. Co.*, No. 01-cv-837, 2006 WL 5349266, at *6 (S.D. Ohio Mar. 27, 2006) (collecting cases where the court allowed the defendant's expert to testify as to the weaknesses in plaintiff's theory of damages without offering his own theory).

The Court therefore declines to exclude Mr. Turner on this basis.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant Fritts's Motion to Exclude Opinion Testimony of James O. Turner and Richard A. Crook [**Doc. 58**].

**IT IS SO ORDERED.**

ENTER:

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge