UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, upon relation and for the use of the TENNESSEE VALLEY AUTHORITY, <br><br> Plaintiff, <br><br> v. <br><br> AN EASEMENT AND RIGHT-OF-WAY OVER 0.98 ACRES OF LAND, MORE OR LESS, IN KNOX COUNTY, TENNESSEE, and JOYCE FRITTS, Trustee of the Joyce Fritts Family Trust, a Revocable Living Trust, <br><br> Defendants. | No. 3:24-CV-00037-DCLC-DCP |

**AMENDED MEMORANDUM OPINION AND ORDER**

This matter is before the Court on United States Magistrate Judge Debra C. Poplin's Memorandum and Order [Doc. 43], Defendant Joyce Fritts's Objections [Doc. 47], Plaintiff Tennessee Valley Authority's Response [Doc. 67], and Ms. Fritts's Reply [Doc. 72]. For the reasons herein, the Court will sustain in part and overrule in part Ms. Fritts's objections.

**I. BACKGROUND**

Last year, the TVA initiated this action for the taking of property under the power of eminent domain. [Compl., Doc. 1]. Specifically, it condemned a permanent easement and right-of-way over Ms. Fritts's property—0.98 acres in Knox County—for "the erection, operation, and maintenance of electric power transmission circuits and communication circuits," [*id.* at 1], and it filed a declaration of taking and a deposit of $112,100.00 as its estimation of just compensation under the Declaration of Taking Act, 40 U.S.C. §§ 3114−3118, [Pl.'s Decl. of Taking, Doc. 1-3, at 1]. The TVA's condemnation of Ms. Fritts's property is part of the Hardin

Valley Transmission Project, which affects seventy-nine other properties. [Mem. & Order at 1–2]. The easement on the condemned portion of Ms. Fritts's property essentially bisects her property, so that remnants of her property abut either side of the easement:



The sole dispute between the parties is whether the TVA's compensation is just. *See Brown v. Legal Found. of Wash.*, 538 U.S. 216, 233 (2003) ("When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner[.]" (quotation omitted)).

As this case progressed into discovery, several discovery disputes arose between the parties, requiring Magistrate Judge Poplin's intervention.[1] Those disputes involved Ms. Fritts's requests for pre-condemnation appraisals; acquisitions, surveys, mapping, and photographs; sales of properties that the TVA had previously condemned; the Harden Valley Transmission Project's plans and costs; information about electromagnetic fields, which transmission lines produce; the private addresses of the TVA's employees; supplementation to expert disclosures; and a protective order. [Mem. & Order at 4–12]. In ruling on these requests, Magistrate Judge Poplin granted some, allowed limited discovery on others, and denied the rest. [*Id.*]. Ms. Fritts objects to Judge Poplin's rulings, and the TVA opposes her objections. Having carefully considered Ms. Fritts's objections and the parties' arguments, the Court is now prepared to rule on them.

## II. STANDARD OF REVIEW

A federal magistrate judge has "broad discretion to regulate nondispositive matters." *Diorio v. TMI Hosp.*, No. 4:15-cv-1710, 2017 WL 1399869, at *2 (N.D. Ohio Apr. 19, 2017) (quotation omitted). When reviewing a magistrate judge's recommendation on a non-dispositive issue, the Court must accept it unless it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). This standard of review is "highly deferential" to the magistrate judge's decision-making authority, *Diorio*, 2017 WL 1399869 at *2 (quotation omitted), and "[t]his standard requires the District Court to review findings of fact for clear error and to review matters of law de novo," *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (quotation omitted).[2]

---

[1] Under Standing Order 13-02, "the magistrate judges of this district may, without the necessity of an order of referral, hear and determine any pretrial matter pending before the court."

3

A magistrate judge's findings of fact are "clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed," *Heights Cmty. Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985), and a magistrate judge's legal rulings are contrary to law when she either "fails to apply or misapplies relevant statutes, case law, or rules of procedure," *Bisig*, 940 F.3d at 219 (internal quotation marks and quotation omitted). The Court may "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

### III. ANALYSIS

Federal Rule of Civil Procedure 26(b)(1) states:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

"The scope of examination permitted under Rule 26(b) is broader than that permitted at trial. The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998) (quotation omitted). The party moving to compel discovery shoulders the burden of showing it is likely to

---

[2] When a magistrate judge rules on relevancy under Federal Rule of Civil Procedure 26(b)(1), as Magistrate Judge Poplin did here, some courts review that ruling for an abuse of discretion, rather than for clear error or acts that are contrary to law. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 255 F. Supp. 3d 700, 704 (E.D. Mich. 2017) ("[A] court has broad discretion over discovery matters [and] a magistrate judge . . . is overruled only if the district court finds an abuse of discretion." (internal citation and footnote committed)); *cf. Bisig*, 940 F.3d at 220 ("[A] district court should review a magistrate judge's determination of harmlessness under Rule 37(c)(1) for an abuse of discretion," because it "accommodates the mixed legal and factual nature of the *Howe* inquiry." (citation omitted)). "A court abuses its discretion 'when the reviewing court is left with a definite and firm conviction that the court below committed a clear error of judgment.'" *Public Interest Legal Found. v. Benson*, 136 F.4th 613, 622 (6th Cir. 2025) (quotation omitted).
   Whether under an abuse of discretion standard or a clearly erroneous or contrary to law standard, the Court has a firm conviction that there has been a clear error in Magistrate Judge Poplin's ruling that Ms. Fritts's discovery requests for damages "do[] not seek relevant information." [Mem. & Order at 7].

4

lead to admissible evidence. *Owensby v. Walgreen Co.*, No. 3:23-CV-58-TRM-DCP, 2024 WL 1643686, at *2 (E.D. Tenn. Apr. 16, 2024).

Under Rule 26(b)(1), Ms. Fritts claims that Magistrate Judge Poplin committed eleven separate errors. In levying her objections, she cites case law to support only a few of them. The Court will confine its review of her objections to those that she supports with citations to case law. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation omitted)); *see also* E.D. Tenn. L.R. 7.1(b) (providing that a party's legal brief "shall include the factual and *legal* grounds which justify the ruling sought from the Court" (emphasis added)).

### A. Harden Valley Transmission Project's Plans and Costs

Ms. Fritts has filed evidence showing that the TVA has damaged her property during its construction of the transmission lines. [Garner Fritts Aff., Doc. 47-2]. According to Garner Fritts, who is Ms. Fritts's son and resides on the property, the TVA has used "work trucks and heavy commercial trucks" to access the easement from Ms. Fritts's driveway, [*id.* at 2], and the driveway is now "uneven, rutted and crumbling," [*id.*]. Garner Fritts also claims that the TVA has "removed a natural guardrail, composed of trees, shrubs and vegetation," and the driveway now "slopes steeply down into the easement," a condition that is a hazard for the property's occupants and guests. [*Id.* at 3]. Continuing on, he asserts that the TVA has removed fences on both sides of the property and uprooted a "dense forest" that had shielded the property from the sights and sounds of the road. [*Id*. at 4]. He further declares that the TVA has created a recess in the property and that the recess has gathered water, forming a "lake" that risks flooding the

5

Case 3:24-cv-00037-DCLC-DCP Document 154 Filed 08/15/25 Page 5 of 14
PageID #: 2793

property. [*Id.* at 5]. He also complains that the TVA has strewn debris on the property so that it now "looks like a war zone," "butchered" a tree that is outside the easement's boundaries, and exposed the property's occupants to electromagnetic fields by installing transmission lines. [*Id.* at 6].

Ms. Fritts now requests the Harden Valley Transmission Project's plans, costs, budget, and actual expenditures, which, she insists, will contain evidence of the TVA's "bad faith," [Def.'s Objs. at 3]—i.e., the TVA's intent to cause damage to her property. Magistrate Judge Poplin denied Ms. Fritts' request because, in her view, it did "not seek relevant information," [Mem. & Order at 7], and for good reason. The TVA is not on trial in this case, so its intent is irrelevant, and Ms. Fritts cites no case law showing that the TVA's intent—whether it acted in good faith, bad faith, or somewhere in between—has anything whatsoever to do with the issue of just compensation, which is a function of value, not intent. *See United States v. Miller*, 317 U.S. 369, 373–74 (1943) (stating that "just compensation" is the fair-market value of property on the date of the TVA's taking).

But the parties, while they were before Magistrate Judge Poplin, grappled over another issue: whether Ms. Fritts, to recover for any damage that the TVA has caused to her broader property—i.e., the areas of her property lying outside the easement—may seek compensation here in this suit or must file a separate suit in tort against the TVA. The TVA argued that "such claims sounded in tort and [Ms. Fritts] would need to file a separate lawsuit." [Mem. & Order at 7]. Ms. Fritts, however, maintained that "it was unfair for [the TVA] to take the property, damage it, and then require Defendant to file a lawsuit over those damages." [*Id.*]. Magistrate Judge Poplin agreed with the TVA, citing *U.S. ex rel. TVA v. A Temporary Right to Enter*, No.

6

4:14-CV-00085, 2017 WL 2559976 (E.D. Tenn. June 13, 2017). In *Temporary Right to Enter*, this Court stated:

> Any claim for physical damage to the subject property arising from the Plaintiff's performance of survey and siting activities pursuant to the temporary easement is a claim sounding in tort to be submitted to the responsible federal agency, here TVA, or if unresolved, in a separate civil action to be brought against TVA under the Tennessee Valley Authority Act of 1933, *as amended*, 16 U.S.C. § 831c(b).

2017 WL 2559976 at *6; *see U.S. ex rel. & for Use of TVA. v. An Easement & Right of Way 150 Feet Wide & 582.4 Feet Long*, 182 F. Supp. 899, 904 (M.D. Tenn. 1960) ("The Commissioners are instructed that they are not to consider in this proceeding any torts which may have been committed in the past or might be committed in the future by the Government. Thus, if the Government's employees should leave the fences down and allow livestock to stray or should trespass beyond the limits of the right of way these would be separate torts for which the Government would be answerable in a separate suit, but not in this proceeding.").

Ms. Fritts contends that Magistrate Judge Poplin clearly erred in deciding that she must rectify her damages in a separate tort action. In Ms. Fritts's view, the damage that the TVA has caused to her property is relevant to a determination of the property's fair-market value here in this action: "No buyer would buy Defendant's property knowing that a suit would have to be brought against TVA to recover the damages," and "Defendant would be forced to lower the price to cover the damages caused by TVA." [Def.'s Objs. at 4]. Ms. Fritts makes a valid point, because when "certain segments of the buying public may [be] apprehensive" about a property, they "might be unwilling to pay as much for the property as they otherwise would." *U.S. ex rel. & for Use of TVA v. Easement & Right of Way 200 Feet Wide*, 405 F.2d 305, 309 (6th Cir. 1968); *see United States v. 103.38 Acres of Land*, 660 F.2d 208, 211 (6th Cir. 1981) ("'Fair market value' is to be determined from 'what a willing buyer would pay in cash to a willing

7

seller.'" (quoting *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 473–74 (1973))).

The TVA, however, asserts that Magistrate Judge Poplin's decision to force Ms. Fritts to seek damages in a separate tort action is "in accord with" its sovereign immunity. [Pl.'s Resp. at 7]. The TVA is "an instrumentality and agency of the Government of the United States," 16 U.S.C. § 831r; *see TVA v. Hill*, 437 U.S. 153, 157 (1978) (referring to the TVA as "a wholly owned public corporation of the United States"), and "[u]nder settled principles of sovereign immunity," it is "immune from suit, save as it consents to be sued." *United States v. Dalm*, 494 U.S. 596, 608 (1990) (internal quotation marks and quotation omitted). Congress created a waiver of the TVA's sovereign immunity for certain tort actions, over which the district courts can exercise subject matter jurisdiction:

> Subject to the provisions of chapter 171 of this title, the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, **for injury or loss of property**, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1) (emphasis added). According to the TVA, this statutory language bars Ms. Fritts from pursuing recompense for her property's damages anywhere but in a separate suit, as Magistrate Judge Poplin ruled.

Magistrate Judge Poplin's ruling that Ms. Fritts's discovery requests for damages "do[] not seek relevant information" to any degree was clearly erroneous and contrary to law, [Mem. Op. & Order at 7], at least to the extent Ms. Fritts's requests are relevant to an assessment of incidental damages that affect her property's fair-market value.[3] Ample precedent exists in this

---

[3] Again, the Court concludes that this ruling was also a clear error of judgment. *See supra* Section II at 4 n.2.

circuit to allow a jury to consider evidence of a property's incidental damages when deciding fair-market value, instead of in a separate suit as a tort claim, *see Hicks v. U.S. for Use of TVA*, 266 F.2d 515, 516–19, 521 (6th Cir. 1959) (awarding incidental damages to a landowner when the TVA condemned an easement over his property, cleared out undergrowth and trees, and installed transmission lines, after considering evidence of the "undesirability of the power lines," erosion from "the cutting down of the trees," flooding, and debris on the property, all of which had contributed to "depreciation" and "damage done to the residue of the land over and above the easement strip [and] included damage to esthetic values");[4] *see also U.S. ex rel. TVA v. Easement & Right of Way 100 Feet Wide*, 447 F.2d 1317, 1319 (6th Cir. 1971) ("The severance of the part taken destroyed the usefulness and value of [a portion of the property]," and "consequential damages should be awarded to the owner[.]"); *Easement & Right of Way 200 Feet Wide*, 405 F.2d at 309 (permitting "incidental damages" after stating that "certain segments of the buying public may . . . remain apprehensive of these high voltage lines"); *An Easement & Right of Way 150 Feet Wide & 582.4 Feet Long*, 182 F. Supp. 2d at 903 ("It is also proper for the [jury] to arrive at their estimate of just compensation by valuing the area covered by the easement immediately before and after the taking plus incidental damages, if any, to the remainder of the property outside the easement area." (citations omitted)).[5]

Under these precedents, Ms. Fritts has properly preserved her right to seek incidental damages at trial. From this case's inception, she claimed the TVA has caused damage to her

---

[4] Like Ms. Fritts's case, *Hicks* involved an easement that "cut[] the [property] roughly in half." *Hicks*, 266 F.2d 517. Although Ms. Fritts does not cite *Hicks* in her objections, she has cited it at other points in this case. *See* [Def.'s Resp., Doc. 108, at 13, 14, 20].

[5] At the final pretrial conference, the TVA conceded that "[d]amage to the remainder [of the property] is incidental damage," and "diminution to the value of the land, diminution to the value of the improvements, that is an incidental damage that Plaintiff would say is compensable within this lawsuit." [Hr'g Tr. at 32:1; 33:1–4 (on file with the Court)].

9

property: "the extent of the taking significantly impairs the value of the Defendant's property including the area taken for the easements and rights-of-way; damages the remainder; and damages the health of the residents." [Answer, Doc. 17, at 2]; *see* Fed. R. Civ. P. 12(b) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required."). In addition, she attempted to call Garner Fritts as a witness at the hearing before Magistrate Judge Poplin, presumably to testify about the damage to the property, but she claims Magistrate Judge Poplin refused to hear him. [Def.'s Objs. at 5]. The precedent in this circuit—which permits a jury to consider incidental damages when determining fair-market value—and Ms. Fritts's preservation of her right to recoup those damages compel the Court, without reservation, to allow the jury to hear the evidence of those damages at trial. Ms. Fritts has every right to pursue those damages while the evidence and the witness' recollections are fresh, rather than wait to initiate a separate action in which the trial could very well take place years from now.

The TVA argues otherwise, but none of its arguments is persuasive. First, it argues that just compensation is "determined as of the date of taking," so any damage that it caused to Ms. Fritts's property after the taking cannot be part of the calculus. [Pl.'s Resp. at 7–8]. Just compensation is indeed the fair market value of property on the date of the taking, *Miller*, 317 U.S. at 373–74, but just compensation also "means the full and perfect equivalent in money of the property taken," and "[t]he owner is to be put in as good position pecuniarily as [s]he would have occupied if [her] property had not been taken," *id.* at 373 (footnotes omitted). So in a case like this one, in which post-taking evidence of incidental damage exists as to portions of the property adjoining the easement, an assessment of fair-market value requires: "first, the before taking value of the land; second, the after taking value within the easement; and, third, *the*

*incidental damages to the land adjacent to the easement*." *Easement & Right of Way 200 Feet Wide*, 405 F.2d at 307 (emphasis added); *see United States v. An Easement & Right-of-Way over 3.74 Acres of Land*, 415 F. Supp. 3d 812, 819 (M.D. Tenn. 2019) ("In a condemnation case of this type, [fair-market] valuation typically requires the resolution of three issues: 'first, the before taking value of the land; second, the after taking value within the easement; and, third, the incidental damages to the land adjacent to the easement.'" (quoting *id.*)). Second, the TVA argues that some of the damages that Ms. Fritts complains of "will be repaired after completion of the project (e.g., after final grading, removal of stumps, re-seeding of grass, etc.)," [Pl.'s Resp. at 12], but whether that argument justifies an offset against incidental damages is in the jury's discretion, not the Court's.

In sum, the Court concludes that the jury, in arriving at fair-market value, may consider Ms. Fritts's evidence of incidental damage associated with the TVA's taking of her property, and she need not resort to filing a separate action in tort to pursue incidental damages. For the purposes of discovery, the upshot of this conclusion is that Ms. Fritts, in requesting the Harden Valley Transmission Project's construction plans—as they pertain to her property *only*—has met her burden of showing that they are reasonably calculated to lead to the discovery of admissible evidence of incidental damages. She has not, however, adequately demonstrated why the Project's budget, costs, and actual expenditures are reasonably calculated to lead to admissible evidence. Magistrate Judge Poplin therefore did not clearly err or act contrary to law in denying her requests for these items. In cross-examining the TVA's witnesses, Ms. Fritts may ask them whether the Project exceeded its budget, costs, and actual expenditures, if she can establish their relevance at trial.

## B. Pre-Condemnation Appraisals of the Other Properties Subject to the Harden Valley Transmission Project

Next, Ms. Fritts faults Magistrate Judge Poplin for denying her request for the TVA's pre-condemnation appraisals of the other seventy-nine properties that the TVA has condemned under the Harden Valley Transmission Project. [Def.'s Objs. at 10–11]. Appraisals are highly relevant evidence in condemnation cases. *See U.S. ex rel. TVA v. 1.72 Acres of Land in Tenn.*, 821 F.3d 742, 747 (6th Cir. 2016) (referring to the testimony of the TVA's appraiser); *U.S. ex. rel. TVA v. Tree-Removal Rights with Respect to Land in McNair Cnty.*, No. 15-1008, 2015 WL 549943, at *3 (W.D. Tenn. Sept. 16, 2015) (stating that an appraisal is dispositive when it is uncontested); *United States v. Block 44*, 177 F.R.D. 687, 690 (M.D. Fla. 1997) (recognizing that the United States's "precondemnation appraisal" is "designed to determine the fair market value of the property"). Magistrate Judge Poplin more or less acknowledged as much, having ordered the TVA to produce the pre-condemnation appraisal of Ms. Fritts's property. [Mem. & Order at 4–5].

As for the appraisals of the other properties, which Ms. Fritts does not own, Ms. Fritts advocated for their disclosure by contending that they "are relevant to the value of her land," [Mem. & Order at 4], for "comparability information and damages," [Def.'s Objs. at 9]. The gestalt of this contention appears to be that whatever damage, if any, the TVA has caused to surrounding properties will have a depreciative effect on her own property. She fails, however, to make a specific showing that even one of these appraisals, let alone seventy-nine of them, is reasonably calculated to lead to the discovery of admissible evidence.

Even if the appraisals were to show, either directly or circumstantially, that the TVA's activities on *other* properties—i.e., properties that Ms. Fritts does not own, whether nearby or adjacent to her property—are depreciating the value of Ms. Fritts's property, they would not

be relevant. *See Campbell v. United States*, 266 U.S. 368, 372 (1924) ("The rule supported by better reason and the weight of authority is that the just compensation assured by the Fifth Amendment to an owner, a part of whose land is taken for public use, does not include the diminution in value of the remainder caused by the acquisition and use of adjoining lands of *others* for the same undertaking." (emphasis added)); *U.S. for Use & Benefit of TVA v. Stewart*, 429 F. Supp. 658, 661 (E.D. Tenn. 1976) (stating that "adjoining parcels may be considered as a unit with that affected by the condemnation where there is *common* ownership" (emphasis added)); *U.S. ex rel. TVA v. Easement and Right-of-Way Over 1.0 Acre of Land*, 248 F. Supp. 702, 703–04 (W.D. Tenn. 1965) ("[T]he owner cannot claim such damage to the extent that it is based on that part of the [power] line not on its property."). Magistrate Judge Poplin therefore did not clearly err in denying Ms. Fritts's requests for the seventy-nine appraisals.

## IV. CONCLUSION

Ms. Fritts satisfies her burden of showing that Magistrate Judge Poplin clearly erred in ruling that she must pursue a separate tort action and that her request for the Harden Valley Transmission Project's construction plans—as they pertain to her property specifically—are not reasonably calculated to lead to the discovery of admissible evidence. Ms. Fritts, however, fails to meet her burden of showing that Magistrate Judge Poplin clearly erred in any other way. Her objections [Doc. 47] are therefore **SUSTAINED in part** and **OVERRULED in part.** The TVA is **ORDERED** to produce to Ms. Fritts, on or before **Wednesday, August 13, 2025**, the Harden Valley Transmission Project's construction plans that pertain to her property *only*.[6]

---

[6] As of the date of entry of this Amended Memorandum Opinion and Order, the TVA has already produced the Harden Valley Transmission Project's construction plans that pertain to her property. [Pl.'s Notice, Doc. 149].

**SO ORDERED:**

                                                   s/ Clifton L. Corker
                                                   United States District Judge