UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, upon relation and for the use of the TENNESSEE VALLEY AUTHORITY, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 3:24-CV-00037-DCLC-DCP ) |
| AN EASEMENT AND RIGHT-OF-WAY OVER 0.98 ACRES OF LAND, MORE OR LESS, IN KNOX COUNTY, TENNESSEE, and JOYCE FRITTS, Trustee of the Joyce Fritts Family Trust, a Revocable Living Trust, | ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff Tennessee Valley Authority's Objections to Evidence and Argument Relating to Claims for which the Court Lacks Subject Matter Jurisdiction and Request for Rule 104 Hearing [Doc. 158]. For the reasons herein, the Court will sustain in part and overrule in part the TVA's objections and deny its motion for a hearing.

**I. BACKGROUND**

Last year, the TVA initiated this action for the taking of property under the power of eminent domain. [Compl., Doc. 1]. Specifically, it condemned a permanent easement and right-of-way over Ms. Fritts's property—0.98 acres in Knox County—for "the erection, operation, and maintenance of electric power transmission circuits and communication circuits," [*id.* at 1], and it filed a declaration of taking and a deposit of $112,100.00 as its estimation of just compensation under the Declaration of Taking Act, 40 U.S.C. §§ 3114−3118, [Pl.'s Decl. of Taking, Doc. 1-3, at 1]. The TVA's condemnation of Ms. Fritts's property is part of the Hardin

Valley Transmission Project, which affects seventy-nine other properties. [Mem. & Order at 1–2]. The easement on the condemned portion of Ms. Fritts's property essentially bisects her property, so that remnants of her property abut either side of the easement:



The sole dispute between the parties is whether the TVA's compensation is just. *See Brown v. Legal Found. of Wash.*, 538 U.S. 216, 233 (2003) ("When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner[.]" (quotation omitted)).

Just a few days ago, the Court ruled that Defendant Joyce Fritts, in her pursuit of just compensation for the TVA's condemnation of her property, could attempt to prove and recover

2

incidental damages at the upcoming trial, instead of in a separate tort action, and it compelled the TVA to produce discovery that the Court believed was relevant to her recovery of these damages. [Am. Mem. & Order, Doc. 154, at 5–11]. The TVA has now filed various objections, which it describes as objections on subject-matter jurisdiction grounds and which read in many ways as objections to the Court's decision to allow Ms. Fritts to prove incidental damages at trial. "The existence of subject matter jurisdiction may be raised at any time, by any party, or even *sua sponte* by the court itself," *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005), and the Court, having carefully review and considered the TVA's objections, is now prepared to rule on them.

## II. EMINENT DOMAIN

Eminent domain is the United States's sovereign power to take private property for public use without a landowner's consent. *PennEast Pipeline Co., LLC v. New Jersey*, 594 U.S. 482, 487 (2021). The TVA has the power to exercise the right of eminent domain in the United States's name, 16 U.S.C. § 831c(h), though the Fifth Amendment requires the TVA to provide the landowner with "just compensation," *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 9–10 (1984); *see Brown v. Legal Found. of Wash.*, 538 U.S. 216, 233 (2003) ("When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner[.]" (quotation omitted)).

## III. ANALYSIS

The TVA contends that the Court, by permitting Ms. Fritts to present evidence of her incidental damages at trial, has impermissibly expanded the scope of these proceedings and impermissibly allowed her to assert a counterclaim. *See* [Pl.'s Objs. at 1 ("[T]he Court lacks subject matter jurisdiction to expand or reduce the property rights described in the declaration

3

of taking or to adjudicate any other claim in this proceeding."); *id.* at 10 ("[N]o counterclaim may be asserted in a condemnation proceeding."). Neither of these contentions is an accurate representation of what the Court has done in allowing Ms. Fritts to pursue incidental damages at trial.

"[C]ourts have advanced theories that a condemnation proceeding is not an action at law, but rather is either some sort of special proceeding, or else an equitable proceeding." *City of Monterrey v. Del Monte Dunes at Monterrey, Ltd.*, 526 U.S. 687, 737 n.3 (1999) (Souter, J., concurring in part) (citations omitted)). "The constitutional requirement of just compensation derives," therefore, "as much content from the basic equitable principles of *fairness*, as it does from technical concepts of property law." *United States v. Fuller*, 409 U.S. 488, 490 (1973) (emphasis added) (internal citation omitted)). "Fairness means that the owner of condemned property 'is entitled to be put in as good a position pecuniarily as if his property had not been taken.'" *United States v. Certain Land Situated in the City of Detroit*, 450 F.3d 205, 210 (6th Cir. 2006) (quoting *Olson v. United States*, 292 U.S. 246, 255 (1934)); *see* [Am. Mem. & Order, Doc. 154, at 10 ("[J]ust compensation also 'means the full and perfect equivalent in money of the property taken,' and '[t]he owner is to be put in as good position pecuniarily as [s]he would have occupied if [her] property had not been taken." (quoting *United States v. Miller*, 317 U.S. 369, 373 (1943))).

The Court's decision to allow Ms. Fritts to pursue incidental damages is in equal parts an adherence to principles of fairness and equal parts an adherence to common law. Ms. Fritts has previously decried as unfair the prospect of having to seek damages in a separate tort suit, [Def.'s Objs., Doc. 47, at 3–4], and to the extent she sought to pursue and recover incidental damages that affect her property's fair-market value, the Court agreed that she was entitled to

4

the opportunity to do so in this case, [Am. Mem. Op. & Order, Doc. 154, at 8–9]. The Court noted that she had properly preserved the issue of incidental damages in her answer, in which she alleged "the extent of the taking significantly impairs the value of [her] property including the area taken for the easements and rights-of-way; damages the remainder; and damages the health of the residents." [Answer, Doc. 17, at 2]; *see* Fed. R. Civ. P. 71.1(e) (providing that a defendant may raise "defenses to the taking" in the answer and waives any defense not alleged in the answer); *see also U.S. ex rel. & for Use of TVA v. Easement & Right of Way 200 Feet Wide*, 405 F.2d 305, 309 (6th Cir. 1968) (addressing the property owner's "claim" of incidental damages). In keeping with principles of fairness, the Court concluded that "Ms. Fritts has every right to pursue [incidental] damages while the evidence and the witness' recollections are fresh, rather than wait to initiate a separate action in which the trial could very well take place years from now." [Am. Mem. Op. & Order, Doc. 154, at 10].

The Court also stressed that "[t]he precedent in this circuit . . . allow[s] the jury to hear the evidence of those [incidental] damages at trial.'" [*Id.*]. Indeed, the Supreme Court, the Sixth Circuit, and district courts in this circuit have repeatedly permitted defendants in condemnation actions to pursue incidental damages. *See Bauman v. Ross*, 167 U.S. 548, 574 (1897) ("[W]hen part only of a parcel of land is taken . . . the value of that part is not the sole measure of the compensation or damages to be paid to the owner; but the incidental injury or benefit to the part not taken also to be considered. When the part not taken is left in such shape or condition as to be in itself of less value than before, the owner is entitled to additional damages on that account."); *Easement & Right of Way 200 Feet Wide*, 405 F.2d at 309 ("We have consistently allowed incidental damages to be considered in [cases involving electric power lines]."); *see also Hicks v. U.S. for Use of TVA*, 266 F.2d 515, 516–19, 521 (6th Cir. 1959); *Instructions to*

5

*Comm'rs,* 61 F.R.D. 503, 516 (E.D. Tenn. 1974); *U.S. ex rel. & for Use of TVA. v. An Easement & Right of Way 150 Feet Wide & 582.4 Feet Long*, 182 F. Supp. 899, 904 (M.D. Tenn. 1960); *cf. U.S. ex rel. TVA v. Easement & Right of Way 100 Feet Wide*, 447 F.2d 1317, 1319 (6th Cir. 1971). And at the final pretrial conference, the TVA conceded that "[d]amage to the remainder [of Ms. Fritts's property] is incidental damage," and "diminution to the value of the land . . . is an incidental damage that Plaintiff would say is compensable within this lawsuit." [Hr'g Tr., Doc. 157, at 34:14–18]. Evidence of incidental damages is therefore unquestionably proper in this case, both on equitable and legal grounds.

So at this juncture, the only legitimate point of contention between the parties is: what evidence of incidental damages will the Court permit the jury to hear? *See* [Pl.'s Trial Br., Doc. 166, at 7 ("[T]he parties materially disagree as to the claims and damages that Defendant can recover as compensation. . . . Plaintiff anticipates substantial evidentiary disputes during trial regarding the types and purpose of evidence that Defendant may offer into evidence.")]. Ms. Fritts has filed evidence of damages that consists of the following:

> Ms. Fritts has filed evidence showing that the TVA has damaged her property during its construction of the transmission lines. [Garner Fritts Aff., Doc. 47-2]. According to Garner Fritts, who is Ms. Fritts's son and resides on the property, the TVA has used 'work trucks and heavy commercial trucks' to access the easement from Ms. Fritts's driveway, [*id.* at 2], and the driveway is now 'uneven, rutted and crumbling' [*id.*]. Garner Fritts also claims that the TVA has 'removed a natural guardrail, composed of trees, shrubs and vegetation,' and the driveway now 'slopes steeply down into the easement,' a condition that is a hazard for the property's occupants and guests. [*Id.* at 3]. Continuing on, he asserts that the TVA has removed fences on both sides of the property and uprooted a 'dense forest' that had shielded the property from the sights and sounds of the road. [*Id.* at 4]. He further declares that the TVA has created a recess in the property and that the recess has gathered water, forming a 'lake' that risks flooding the property. [*Id.* at 5]. He also complains that the TVA has strewn debris on the property so that it now 'looks like a war zone' 'butchered' a tree that is outside the easement's boundaries, and exposed the property's occupants to electromagnetic fields by installing transmission lines. [*Id.* at 6].

6

[Am. Mem. Op. & Order, Doc. 154, at 5–6]. Ms. Fritts appears to believe that every bit of this evidence constitutes evidence of incidental damages and is proper for the jury's consideration. *See* [Def.'s List of Damages, Doc. 169, at 1–4]. The TVA, though, believes otherwise, arguing that "physical damage to the property resulting from TVA's use, construction activities, would be a damage, a tort to the property," [Hr'g Tr. at 45:1–3], and that the Court is without subject matter jurisdiction over damages sounding in tort, [Pl.'s Objs. at 12–13]. The TVA maintains, as it has all along in this case, that if Ms. Fritts wishes to pursue these types of damages, she must do so in a separate tort action. *See* [Hr'g Tr. at 157:15–16 (contending that "the TVA is separately liable for [tort] damages")].

The parties, frankly, have done little to aid the Court in ascertaining what, exactly, constitutes incidental damages in a condemnation action. The case law contains no precise definition of incidental damages—other than the fact that it is "damage to the land not taken," *Hicks*, 266 F.2d at 519, or "to the remainder of the property outside the easement area," *An Easement & Right of Way 150 Feet Wide & 582.4 Feet Long*, 182 F. Supp. at 903. The TVA appears to be at a loss for a definition:

> The Court: When we were looking at the *Commissioners' Instruction*, we didn't find that incidental damages had a special definition that we could find.
>
> Mr. Chase: Yes.
>
> The Court: The case law says, oh, and, by the way, there's incidental damages too, so we're kind of interested, what's your take on that?
>
> Mr. Chase: So my take, I've been doing this for a little bit of time, is that it depends on the judge and the court as to what incidental damages, you know, with all candor to the Court.

[Hr'g Tr. at 44:11–21].

7

On the one hand, the case law unequivocally allows for a property owner's recovery of incidental damages in a condemnation action. *Easement & Right of Way 200 Feet Wide*, 405 F.2d at 309; *Hicks*, 266 F.2d at 516–19; *Instructions to Comm'rs,* 61 F.R.D. at 516; *U.S. ex rel. & for Use of TVA v. An Easement & Right of Way 150 Feet Wide & 582.4 Feet Long*, 182 F. Supp. at 904; *cf. U.S. ex rel. TVA v. Easement & Right of Way 100 Feet Wide*, 447 F.2d at 1319. But on the other hand, as the TVA argues, the case law also unequivocally forbids a property owner's recovery of damages sounding in tort. *United States v. 3,317.39 Acres of Land, More or Less, in Jefferson Cnty.*, 443 F.2d 104, 106 (8th Cir. 1971); *Boston Edison Co. v. Campanella & Cardi Constr. Co.*, 272 F.2d 430, 432 (1st Cir. 1959); *U.S. ex rel. TVA v. A Temporary Right to Ent*er, No. 4:14-CV-00085-HSM-SKL, 2017 WL 2559976, at *6 (E.D. Tenn. June 13, 2017); *An Easement & Right of Way 150 Feet Wide & 582.4 Feet Long*, 182 F. Supp. at 903−04; *United States v. Improved Premises Known as No. 46-70 McLean Ave.*, 54 F. Supp. 469, 471 (S.D.N.Y. 1944); *see generally FDIC v. Meyer*, 510 U.S. 471, 477 (1994) ("Section 1346(b) grants the federal district courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity and 'rendere[d]' itself liable. This category includes claims that are: '[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property[.]" (first and second alterations in original) (quoting 28 U.S.C. § 1346(b))).

So how does the Court draw a line between these two types of damages for the jury? As one author wrote:

> Identifying a meaningful distinction between common law torts and constitutional takings is a task that has evaded courts for the last hundred years. Courts struggle to distinguish between these two remunerative remedies because both frequently arise under similar circumstances.
>
> . . . .

> [T]he government and its agents often engage in tortious conduct that is not tantamount to a constitutional taking. . . . Government agents trespass on private property just as private actors trespass. Further, both private and public officials can act negligently. Although the legal remedy against the private party lies in tort, the government may be liable either under a tort theory or the Fifth Amendment's Just Compensation Clause.

Jed Michael Silversmith, *Takings, Torts and Turmoil: Reviewing the Authority Requirement of the Just Compensation Clause*, 19 UCLA J. Env't L. & Policy 359, 360 (2002).

The First Circuit has referred to incidental damages as damages that "are necessarily incident to the accomplishment of the public object," *Boston Edison*, 272 F.2d at 432, which, in this case, is "the erection, operation, and maintenance of electric power transmission circuits and communication circuits," [Decl. of Taking at 2]. The Supreme Court and the Sixth Circuit have elucidated further, providing examples of incidental damages in case law. In *Keokuk and Hamilton Bridge Co. v. United States*, 260 U.S. 125 (1922), which is not a condemnation case, the United States damaged a bridge while performing "authorized construction" on a nearby channel. *Id.* at 126. The Supreme Court characterized the damage to the bridge as "incidental damage."[1] In *Hicks*, a condemnation case that involved the construction of power lines on the condemned property, the Sixth Circuit awarded incidental damages to the property owner, and in doing so, it considered "apprehension of injuries to person or property by the presence of the power lines," reduced "desirability," diminishment of the property's "esthetic values," and "depreciat[ion] of the present market value." 266 F.2d at 520, 521. Similarly, in *Easement & Right of Way 200 Feet Wide*, a case that also involved the construction of power lines on a condemned property, the Sixth Circuit awarded incidental damages to the property owner after acknowledging that "the buying public" may be "apprehensive" of the power lines and therefore

---

[1] The Supreme Court also stated that "it might be a tort" and that, at the time, "there [was] no remedy against the United States." *Keokuk & Hamilton Bridge*, 260 U.S at 126.

9

"might be unwilling to pay as much for the property as they otherwise would." 405 F.2d at 309. The Fifth Circuit, in a case that involved the construction of power lines on a condemned property, identified the following damages as incidental damages:

> These incidental damages consist of the unsightliness in this locale of the towers and transmission line; danger to persons and property (real and apprehended) arising from the presence of the power line on the land; change in looks arising from the cutting of trees and clearing of the right-of-way and minor erosion problems which will arise from such clearing. All of these, this Court finds, diminish the value of the whole estate[.]

*U.S. for Use of TVA v. Robertson*, 354 F.2d 877, 880–81 (5th Cir. 1966).

With these cases as guideposts, the Court has fashioned a jury instruction that it believes is simultaneously inclusive of incidental damages and exclusive of tort-related damages, and it intends to instruct the jury as follows:

> In determining just compensation, you must also consider any incidental damage that the United States, during the course of its authorized uses of the easement and right of way, has caused to the property outside the easement—that is, to the property not taken.
> Incidental damages are any damages that are incident to the accomplishment of the United States's public purpose in condemning the property and that affect the property's fair market value. For example, you may consider whether the power lines depreciate the fair-market value of the property, either because they affect the property's aesthetic value or because they would make prospective buyers apprehensive about buying the property or unwilling to pay as much for the property as they otherwise would.
> You may not, however, award incidental damages that are speculative, conjectural, or not reasonably certain. In addition, incidental damages do not include damages resulting from the United States's unfair treatment of the property owner's private rights or damages resulting from its lack of ordinary care or unskillful manner in constructing the electric power lines, and you should not consider those types of damages in determining the amount of incidental damages, if any.
> If you determine that the United States has incidentally damaged the property outside the easement, you must consider those incidental damages in arriving at just compensation. The incidental damage to the property outside the easement is the difference between the value of that property before and after the taking of the easement and right of way.

This jury instruction functions exactly as a jury instruction should: it allows the jury to decide, from the facts before it, whether Ms. Fritts's evidence of damages to the property outside the easement and right of way meets the Court's definition of incidental damages. For example, the parties dispute whether Ms. Fritts's evidence of damage to her driveway—i.e., her photos showing that the driveway is "uneven, rutted and crumbling" because of the TVA's use of it, [Garner Fritts Aff., Doc. 47-2, at 2; Def.'s Photos, Doc. 47-3, at 4, 7]—constitutes evidence of incidental damages or tort-related damages. Does the damage to the driveway more closely resemble evidence of depreciation of the property's fair-market value, either because it affects the property's aesthetic value or makes prospective buyers less willing to purchase it? *See U.S. ex rel. TVA v. Easement & Right of Way over Land in Logan Cnty.*, 336 F.2d 76, 89 (6th Cir. 1964) (McAllister, J., dissenting) ("In accordance with the decision of this court in the *Hicks* case, injury to the aesthetic value of land is an element of damages."). Or does the damage to the driveway more closely resemble evidence resonating in tort from the TVA's negligent or unfair treatment of Ms. Fritts's private rights?

The jury will decide, with the caveat that the Court will instruct the jury that it may not award compensation for any damages that, in its view, sound in tort. Damages are after all traditionally the jury's bailiwick, and federal courts treat damages in condemnation actions no differently. *See Hicks*, 266 F.2d at 521 ("[I]t is a question for the jury whether a reasonable apprehension of danger from inherent defects and unavoidable accidents may exist, and, if so, such an apprehension so far as it depreciates the present market value of the land not taken is an element of incidental damages."); *see also United States v. $6,162.78 Acres of Land, More or Less, Situated in Concord Parish*, 680 F.2d 396, 400–01 (5th Cir. 1982) ("[T]he jury was properly charged to award severance damages, if any, as it thought proper. The instructions

11

fully delineated the issue of severance damages and how such damages were to be assessed. Therefore, the jury verdict includes any severance damages the jury felt were warranted." (footnote omitted)); *cf. City of Monterrey*, 526 U.S. at 720–21 ("[W]hether a landowner has been deprived of all economically viable use of his property is a predominantly factual question," and "this question is for the jury."). And, incidentally, the Court's decision that it will instruct the jury to distinguish between incidental and tort-related damages, and not award the latter, is on par with what the TVA has advocated for. *See* [Pl.'s Proposed Jury Instructions, Doc. 151, at 40 ("You are not to consider in this proceeding any torts[.]")].

Lastly, one final point of clarification: the TVA's declaration of taking controls the demarcations of the easement and right of way. *See Berman v. Parker*, 348 U.S. 26, 35 (1954) ("It is not for the courts to oversee the choice of the boundary line nor to sit in review on the size of a particular project area.'); *3,317.39 Acres of Land*, 443 F.2d at 105–06 ("[T]he nature and the extent of the interest to be acquired . . . are specified in . . . the declaration of taking, which may not be increased or decreased by the courts."). The TVA, in the documentation that it attached to the declaration of taking, states that the easement and right of way "contains 0.98 acre, more or less." [Attachment 1, Doc. 1-4, at 1]. Ms. Fritts, however, describes the easement and right of way as consisting of ".989 acres," [Final Pretrial Order, Doc. 143, at 2], and the TVA objects, on subject-matter jurisdiction grounds, to any argument or evidence that the easement and right of way consists of 0.989 acres rather than 0.98 acres, [Pl.'s Objs. at 7– 8]; *see 3,317.39 Acres of Land* at 106 (determining that the district court lacked jurisdiction to admit evidence of "flooding of lands in addition to those described in the declaration of taking" because the defendant sought the inclusion of this evidence to show that the taking extended to those lands).

12

Case 3:24-cv-00037-DCLC-DCP   Document 178   Filed 08/25/25   Page 12 of 14
PageID #: 3162

The Court fully agrees that Ms. Fritts's inflated description of the easement and right of way is improper, and the Court will not permit her to argue or show that it exceeds 0.98 acres at trial. But if Ms. Fritts wishes to demonstrate to the jury that the TVA's taking has resulted in incidental damages to the remainder of her property outside the easement and right of way, she is, again, perfectly within her rights to do so. *See 3,317.39 Acres of Land*, 443 F.2d at 106 (allowing the defendant to recuperate "incidental damages, if any, caused by th[e] taking to the remainder"); *Hicks*, 266 F.2d at 519 (recognizing that incidental damages concern "damage to the land not taken"); *An Easement & Right of Way 150 Feet Wide & 582.4 Feet Long*, 182 F. Supp. at 903 (stating that incidental damages apply "to the remainder of the property outside the easement area."). But the Court will not allow her to challenge the dimensions of the easement and right of way in any way.

So, in sum, to the extent the TVA argues that the Court has impermissibly allowed Ms. Fritts to bring a counterclaim in this case, the TVA's objections are **OVERRULED**. To the extent the TVA argues that the Court lacks subject matter jurisdiction over any tort claims, its objections are **SUSTAINED**, and the Court believes it has adequately addressed this objection in its jury instruction on incidental damages. To the extent the TVA objects to any argument or evidence that the easement and right of way is larger than 0.98 acres, its objection is **SUSTAINED**. And to the extent the TVA requests a hearing under Federal Rule of Evidence 104, its request is **DENIED** because it does not argue that a hearing is necessary under any of Rule 104(c)'s three criteria. *See* Fed. R. Evid. 104(c) (stating that courts must conduct a hearing outside the jury to address preliminary questions if "(1) the hearing involves the admissibility of a confession; (2) a defendant in a criminal case is a witness and so requests; or (3) justice so requires").

13

**SO ORDERED:**

                                          s/ Clifton L. Corker
                                          United States District Judge