UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, upon relation and for the use of the TENNESSEE VALLEY AUTHORITY,<br><br>    Plaintiff,<br><br>v.<br><br>AN EASEMENT AND RIGHT-OF-WAY OVER 0.98 ACRES OF LAND, MORE OR LESS, IN KNOX COUNTY, TENNESSEE, and JOYCE FRITTS, Trustee of the Joyce Fritts Family Trust, a Revocable Living Trust,<br><br>    Defendants. | No. 3:24-CV-00037-DCLC-DCP |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on United States Magistrate Judge Debra C. Poplin's Memorandum and Order [Doc. 118], Defendant Joyce Fritts's Objections [Doc. 137], and Plaintiff Tennessee Valley Authority's Response [Doc. 159]. For the reasons herein, the Court will sustain Ms. Fritts's objections.

**I. BACKGROUND**

Last year, the TVA initiated this action for the taking of property under the power of eminent domain. [Compl., Doc. 1]. Specifically, it condemned a permanent easement and right-of-way over Ms. Fritts's property—0.98 acres in Knox County—for "the erection, operation, and maintenance of electric power transmission circuits and communication circuits," [*id.* at 1], and it filed a declaration of taking and a deposit of $112,100.00 as its estimation of just compensation under the Declaration of Taking Act, 40 U.S.C. §§ 3114−3118, [Pl.'s Decl. of Taking, Doc. 1-3, at 1]. The TVA's condemnation of Ms. Fritts's property is part of the Hardin

Valley Transmission Project, which affects seventy-nine other properties. [Mem. & Order at 1–2]. The easement on the condemned portion of Ms. Fritts's property essentially bisects her property, so that remnants of her property abut either side of the easement:



The sole dispute between the parties is whether the TVA's compensation is just. *See Brown v. Legal Found. of Wash.*, 538 U.S. 216, 233 (2003) ("When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner[.]" (quotation omitted)). Just compensation is the fair-market value of property on the date of the TVA's taking. *United States v. Miller*, 317 U.S. 369, 373–74 (1943), and "the correct measure of compensation for an easement, as for any partial taking, is

the difference in fair market value of the whole tract before and after the taking," *U.S. ex rel. TVA v. 1.72 Acres of Land in Tenn.*, 821 F.3d 742, 756 (6th Cir. 2016) (quotation omitted)).

In an effort to establish fair-market value, Ms. Fritts retained Gregory A. Bonneville, a licensed appraiser in Tennessee, to offer opinions on Ms. Fritts's property's value before and after the taking. Mr. Bonneville's opinion as to the after-taking value, specifically, became the subject of a dispute between the parties under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals Corp.*, 509 U.S. 579 (1993), and it required Magistrate Judge Poplin's intervention.[1] Magistrate Judge Poplin observed that Mr. Bonneville's "before-take value" was $845,000, that his "after-take value" was $640,000, and that his valuation of just compensation was the difference between the two: $195,000, which he rounded to $200,000. [Mem. & Order at 3]. As to the after-taking value, Magistrate Judge Poplin summarized Mr. Bonneville's methodology as follows:

> With respect to his after-take opinion, Mr. Bonneville opined that the Subject Property was valued at $645,000. To arrive at this opinion, he divided the Subject Property into three units: (1) Tract north of TVA easement ("North Tract"), (2) TVA Easement, and (3) an area south of TVA easement ("Uneconomic Remnant"). 'He next assigned a functional percentage to each unit to account for changes in utility resulting from the taking.' Mr. Bonneville found that the North Tract had 100% functionality; the TVA Easement had 20% functionality, so it was unfunctional by 80%; and the Uneconomic Remanent had 0% functionality.

[*Id.* at 2].

The TVA argued that Mr. Bonneville's after-taking methodology was faulty because he valued part of the property—a 1.06-acre tract that lies south of the easement—at zero. [Pl.'s

---

[1] Under Standing Order 13-02, "the magistrate judges of this district may, without the necessity of an order of referral, hear and determine any pretrial matter pending before the court."

Mem., Doc. 50, at 11–14].[2] Magistrate Judge Poplin agreed and ordered the "exclu[sion] [of] Mr. Bonneville's opinion that [this tract] has 0% functionality." [Mem. & Order at 16]. Ms. Fritts has timely objected to Magistrate Judge Poplin's decision to exclude Mr. Bonneville's opinion that the 1.06-acre tract has zero functionality. In response to her objections, the Court ordered oral argument. [Order, Doc. 138]. Having carefully reviewed and considered her objections, the Court is now prepared to rule on them.

## II. STANDARD OF REVIEW

A federal magistrate judge has "broad discretion to regulate nondispositive matters." *Diorio v. TMI Hosp.*, No. 4:15-cv-1710, 2017 WL 1399869, at *2 (N.D. Ohio Apr. 19, 2017) (quotation omitted). When reviewing a magistrate judge's recommendation on a non-dispositive issue, the Court must accept it unless it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). This standard of review is "highly deferential" to the magistrate judge's decision-making authority, *Diorio*, 2017 WL 1399869 at *2 (quotation omitted), and "[t]his standard requires the District Court to review findings of fact for clear error and to review matters of law de novo," *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (quotation omitted).

A magistrate judge's findings of fact are "clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed," *Heights Cmty. Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985), and a magistrate judge's legal rulings are contrary to law when she either "fails to apply or misapplies relevant statutes, case law, or rules of procedure," *Bisig*, 940 F.3d at 219 (internal

---

[2] Mr. Bonneville personally inspected Ms. Fritts's property and the 1.06-acre tract, and he observed that this tract had "steep topography," [Mr. Bonneville's R., Doc. 48-2, at 35], and is "damaged at a far more severe rate than any other part of the subject site," [Mr. Bonneville's Suppl., Doc. 48-4, at 8].

4

quotation marks and quotation omitted). The Court may "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a),

### III. ANALYSIS

Under Federal Rule of Evidence 702, which governs the admissibility of an expert's opinion, the Court may permit "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to offer an opinion if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 tasks the Court with performing a "gate-keeping role" when determining the admissibility of an exper's opinion, *Daubert*, 509 U.S. at 597, and in deciding whether this gate permits entry to an expert's opinion, the Court considers three requirements.

First, the expert must be qualified, whether by "'knowledge, skill, experience, training, or education.'" *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting Fed. R. Evid. 702). Second, the expert's opinion must be relevant, which means it must assist the trier of fact in understanding the evidence or in resolving a question of fact. *Id.* And third, the testimony must be reliable. *Id.* The Sixth Circuit has repeatedly recognized, including in condemnation actions, that "rejection of expert testimony is the exception, rather than the rule." *U.S. ex rel. TVA v. 1.72 Acres of Land in Tenn.*, 821 F.3d 742, 753 (6th Cir. 2016) (quotation omitted). Rule 702 is, therefore, "broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact," *id.* at 749, and the Supreme Court has "emphasize[d]" that the inquiry is "a flexible one," *Daubert*, 509 U.S. at 595 (footnoted omitted). The burden is

on the party offering the expert to establish that he is qualified and that his opinion is relevant and reliable. *Id.* at 592 n.10.

The TVA does not challenge Mr. Bonneville's qualifications, only his methodology. *See* [Pl.'s Mem., Doc. 53, at 6 (contending that Mr. Bonneville's "opinions were formed using an improper methodology"). Again, in cases involving a partial taking, "the correct measure of compensation" is "the difference in fair market value of the whole tract before and after the taking," *1.72 Acres of Land*, 821 F.3d at 756 (quotation omitted). This measure is known as the before-and-after method. Ms. Fritts argues that an application of the before and after method is "exactly what Mr. Bonneville did." [Hr'g Tr., Doc. 157, at 16:3–4]. But the TVA asserts that "[t]here are" only "two ways to prove compensation using the before and after method," [Pl.'s Mem., Doc. 50, at 7], and it insists in its briefing that Mr. Bonneville used neither one, [*id.* at 7–8]; *but see United States v. Fuller*, 409 U.S. 488, 490 (1973) (stating that fair-market value is "not an absolute standard nor an exclusive method of valuation" (quotation omitted)); *United States v. 819.98 Acres of Land, More or Less*, 78 F.3d 1468, 1471 (10th Cir. 1996) ("[T]he law is not wedded to any particular formula or method for determining fair market value as the measure of just compensation." (quotation omitted)).

During oral argument, however, the TVA acknowledged, if only implicitly, that Mr. Bonneville did in fact apply some version of the before-and-after method: "You know, [Mr. Bonneville] created a before value of the entire property prior to the taking of $840,000, he valued the smaller functional acreage at 5.29 acres at $645,000, and his compensation opinion then is $200,000." [Hr'g Tr. at 36:3–7]. So the TVA appears to argue that Mr. Bonneville used the before-and-after method but applied a flawed version of it. This kind of argument typically

6

goes to the weight of the evidence rather than to its admissibility, unless the expert is guilty of "a significant error in application." *In re Scrap Metal*, 527 F.3d at 530.

The TVA maintains that Mr. Bonneville committed this type of error—or a "pivotal mistake," as the TVA calls it, [Hr'g Tr. at 19:15]—by assigning zero functionality to the 1.06-acre tract south of the easement. By assigning zero functionality to this tract, Mr. Bonneville, the TVA contends, valued only part of the property and not the whole tract. [Pl.'s Mem., Doc. 50, at 11]; *see 1.72 Acres of Land*, 821 F.3d at 756 (recognizing that "the correct measure of compensation" is "the difference in fair market value of the *whole* tract before and after the taking" (emphasis added)). Ms. Fritts, however, claims that the Mr. Bonneville did value the whole tract, [Def.'s Objs. at 5], and that TVA's arguments go to "the accuracy" of his results, which she says the Court ought not to scrutinize under *Daubert*, [*id.* at 6].

Because exclusion of an expert's opinion is the exception and not the rule and because the TVA acknowledges that Mr. Bonneville used but misapplied the before-and-after method, exclusion of Mr. Bonneville is improper. *See In re Scrap Metal*, 527 F.3d at 529 (rejecting an argument for an expert witness's exclusion when the expert had applied the "during and after" method, the "broadly accepted [method] for proving antitrust damages," but used "erroneous data"); *id.* (warning courts to take care not to confuse an expert opinion's "*accuracy* . . . with its *reliability*" because "reliab[ility] does not indicate, in any way, the correctness . . . of such an opinion"); *Quiet Tech. DC–8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1343–44 (11th Cir. 2003) ("[T]he alleged flaws in [the expert's] analysis are of a character that impugn the accuracy of his results, not the general scientific validity of his methods. The identification of such flaws in generally reliable scientific evidence is precisely the role of cross-examination."); *Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951, 956 (E.D. Mich. 2018) ("A court

7

Case 3:24-cv-00037-DCLC-DCP Document 179 Filed 08/25/25 Page 7 of 8
PageID #: 3171

may not exclude expert testimony simply for dubious credibility or accuracy. . . . [A]ny issue regarding the credibility or accuracy of admitted expert testimony goes to the weight of the evidence, and can be addressed via cross-examination and 'presentation of contrary evidence' by opposing counsel." (quoting *In re Scrap Metal*, 527 F.3d 529–30)); *see also Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (citation omitted)); *Walter v. Auto-Owners Mut. Ins. Co.*, No. 3:15-CV-535-TAV-DCP, 2018 WL 4102244, at *2 (E.D. Tenn. Aug. 28, 2018) ("[R]ejection of expert testimony is the exception rather than the rule—the gatekeeping function established by *Daubert* was never 'intended to serve as a replacement for the adversary system.'" (alteration in original) (quotation omitted)).

## IV. Conclusion

Ms. Fritts satisfies her burden of showing that Magistrate Judge Poplin clearly erred and acted contrary to law in excluding Mr. Bonneville's opinion. Ms. Fritts's objections [Doc. 137] are therefore **SUSTAINED.** The TVA's Motion to Exclude Opinion Testimony of Appraiser Gregory A. Bonneville [Doc. 49] is **DENIED**.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge