UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, upon relation and for the use of the TENNESSEE VALLEY AUTHORITY,<br><br>Plaintiff,<br><br>v.<br><br>AN EASEMENT AND RIGHT-OF-WAY OVER 0.98 ACRES OF LAND, MORE OR LESS, IN KNOX COUNTY, TENNESSEE, and JOYCE FRITTS, Trustee of the Joyce Fritts Family Trust, a Revocable Living Trust,<br><br>Defendants. | ) | No. 3:24-CV-00037-DCLC-DCP |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Joyce Fritts's Motion for Costs, Attorney Fees, and Expenses [Doc. 204], United States Magistrate Judge Debra Poplin's Report and Recommendation [Doc. 220], Ms. Fritts's Objections [Doc. 227], Plaintiff the United States of America's Response [Doc. 231], and Ms. Fritts's Reply [Doc. 234]. For the reasons below, the Court will overrule Ms. Fritts's objections and deny her motion.

## I. BACKGROUND

The United States brought this action for the taking of property under the power of eminent domain. [Compl., Doc. 1]. The parties proceeded to trial last year on the sole issue of just compensation for the taking of Ms. Fritts's property. At trial, Ms. Fritts's expert appraiser, Gregory A. Bonneville, testified that Ms. Fritts was entitled to just compensation totaling $200,000.00, [Trial Tr., Doc. 198, at 151:10–12], while the United States's expert appraiser, Richard A. Crook, testified that she was entitled to just compensation totaling $144,225.00,

[Trial Tr., Doc. 199, at 90:9–12, 98:18–22]. The jury awarded her $169,612.50 in just compensation. [Verdict Form, Doc. 187]. After trial, Ms. Fritts moved for attorney's fees, expenses, and costs totaling $561,094.72. [Def.'s Mot. for Costs, Fees, & Expenses, Doc. 204, at 2].

The parties now dispute whether Ms. Fritts is entitled to fees, expenses, and costs. Magistrate Judge Poplin recommends the Court deny her motion. Ms. Fritts has timely objected to Magistrate Judge Poplin's report and recommendation.

## II. Standard of Review

When reviewing a magistrate judge's recommendation on a dispositive issue, the Court conducts a de novo review of that recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). A magistrate judge's recommendation on a motion for attorney's fees is dispositive in nature. *See* Fed. R. Civ. P. 54(d)(2)(D); *see also McCombs v. Meijer, Inc.*, 395 F.3d 346, 360 (6th Cir. 2005) ("A Magistrate Judge is not permitted to determine costs or fees, but may make a report and recommendation to the district court on such issues. After being presented with the Magistrate Judge's report and recommendation, the district court must then conduct a de novo review of the findings and issue an order as it sees fit." (citation omitted)); *Riddle v. Comm'r of Soc. Sec.*, No. 17-10905, 2019 WL 994682, at *1 (E.D. Mich. Mar. 2, 2019) ("Motions for attorney fees referred to a magistrate judge are regarded as dispositive matters, requiring fresh review by the district court." (citing Fed. R. Civ. P. 54(d)(2)(D); *Massey v. City of Ferndale*, 7 F.3d 506, 510–11 (6th Cir. 1993))); *Lewis v. Miller*, No. 3:14–cv–0897, 2015 WL 4679319, at *1 (M.D. Tenn. Aug. 6, 2015) ("The Report and Recommendation related to the plaintiff's Motion for Attorney's Fees and Costs . . . is considered a dispositive matter.").

A de novo review requires the Court "to give fresh consideration" to the issues before it. *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quotation omitted). In doing so, it "cannot simply 'concur' in the magistrate judge's findings," *McCombs*, 395 F.3d at 360; instead, it must reach "the ultimate determination of the matter" through its own judicial discretion, *Raddatz*, 447 U.S. at 675–76. After its review, it "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## III. Analysis

"[The] basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (quotation omitted). The Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, contains one such exception, and Ms. Fritts moves for attorney's fees, expenses, and costs under the EAJA, which, in pertinent part, states:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Under this statutory language, Ms. Fritts, to be eligible to recover "fees and other expenses,"[1] must (1) be the "prevailing party"; (2) the United States's position must not be "substantially justified"; (3) "special circumstances mak[ing] an award unjust" must

[1] The term "fees and other expenses" means "the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees." 28 U.S.C. § 2412(d)(2)(A).

not exist; and (4) the application for fees and expenses must be timely—i.e., filed within thirty days of final judgment in the action—and must be accompanied by an itemized statement. *Comm'r, INS v. Jean*, 496 U.S. 154, 158 (1990).

The record lacks any dispute as to whether Ms. Fritts's application under the EAJA is timely. *See* [R. & R., Doc. 220, at 3 ("Plaintiff does not address the timeliness of Defendant's motion.")]. The only disputes are whether Ms. Fritts is the prevailing party under the EAJA and, if so, whether the United States's position in this litigation was substantially justified. Magistrate Judge Poplin recommends this Court deny Ms. Fritts's application, having determined that she is not the prevailing party and that the United States's position was substantially justified. [*Id.* at 4–11].

**A. Prevailing Party**

The EAJA defines the term "prevailing party" as follows:

> '[P]revailing party,' in the case of eminent domain proceedings, means a party[2] who obtains a final judgment (other than by settlement), exclusive of interest, the amount of which is at least as close to the highest valuation of the property involved that is attested to at trial on behalf of the property owner as it is to the highest valuation of the property involved that is attested to at trial on behalf of the Government[.]

28 U.S.C. § 2412(d)(2)(H). This means that "the prevailing party is the one who provided the valuation estimate in court that is closest to the jury's award." *United States v. Certain Land Situated in City of Detroit*, 633 F.3d 418, 422 (6th Cir. 2011) (footnote omitted). "If the award is exactly half-way between the valuations, the landowner is the prevailing party." *Id.*.

[2] The United States does not dispute that Ms. Fritts is a party under the EAJA. [R. & R., Doc. 220, at 4]; *see* 28 U.S.C. § 2412(d)(2)(B) (defining the term "party").

"The party seeking fees and costs under the EAJA bears the burden of proving that it was the prevailing party." *Boren ex rel. N.L.R.B. v. Cont'l Linen Servs., Inc.*, No. 1:10–CV–562, 2011 WL 2261537, at *2 (W.D. Mich. June 8, 2011) (citing *Reich v. Walter W. King Plumbing & Heating Contractor, Inc.*, 98 F.3d 147, 150–51 (4th Cir. 1996)); *cf. United States v. Tennessee*, 780 F.3d 332, 336 (6th Cir. 2015) ("The party seeking fees bears the burden of proving that it was the prevailing party with respect to the work done to generate them." (citation omitted)). In attempting to meet this burden, Ms. Fritts raised two arguments before Magistrate Judge Poplin. First, she pointed to her Bill of Costs [Doc. 193], which she filed under Local Rule 54.1,[3] and argued that the United States waived any challenge to her status as the "prevailing party" because it did not respond in opposition to her bill of costs. [R.& R., Doc. 220, at 5]. Second, she argued that she meets the definition of "prevailing party" under the EAJA. [*Id.* at 5–6]. Magistrate Judge Poplin rejected both arguments, and the Court finds no error in her analysis or her recommendation.

As to Ms. Fritts's argument that the United States conceded that she is the prevailing party because it did not respond to her bill of costs, this argument lacks merit. First, Ms. Fritts's bill of costs is not in substance an application for "fees and other expenses" under the EAJA. 28 U.S.C. § 2412(d)(1)(A). She filed her bill of costs on a Form AO 133, which is "[t]he standard form for presenting a bill of costs" to the Court. *Garcia v. Sigmatron Int'l, Inc.*, No. 11 C 07604, 2016 WL 6892861, at * 5 (N.D. Ill. Nov. 23, 2016). Second, the Court's local rules, which have

[3] Local Rule 54.1 states: "If counsel for the litigants in a civil case are able to agree on costs, they need not file a bill of costs with the Clerk. If counsel cannot agree, a bill of costs shall be filed by the prevailing party with the Clerk within 21 days from the entry of judgment. A copy of the bill of costs shall be served upon opposing counsel. The opposing counsel shall file written objections within 21 days from the date of service. The bill of costs, and any objection, must be prepared and filed in accordance with the Court's Guidelines on Preparing Bills of Costs. The prevailing party may file a reply to any objections within 14 days from the date of service. The Clerk shall then assess the costs in accordance with the Court's Guidelines on Preparing Bill of Costs."

"the force of law," *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010) (quotation omitted), state that the bill of costs "must be prepared and filed in accordance with the Court's Guidelines on Preparing Bills of Costs," E.D. Tenn. L.R. 54.1, and those guidelines state that "[a]ttorneys' fees must be requested *by separate motion* to the Court," *Guidelines on Preparing Bills of Costs*, Guideline III.K.2 (emphasis added).[4] And third, Ms. Fritts, in her bill of costs, requests compensation for the costs of transcripts and copies of certain documents, and neither satisfies the definition of "fees and other expenses" under the EAJA. *See* 28 U.S.C. § 2412(d)(2)(A) (providing that "'fees and other expenses' includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees"). For all these reasons, Ms. Fritts's bill of costs is not an application for fees and other expenses under the EAJA, and the United States, in not responding to it, therefore did not waive its opposition to Ms. Fritts's argument that she is the prevailing party.

Next, as to Ms. Fritts's argument that she is the prevailing party under the EAJA, that argument fails too. Mr. Bonneville, Ms. Fritts's expert appraiser, testified at trial as follows:

> Q. Now, your conclusion, what was your conclusion of compensation?
>
> A. $195,000 rounded to $200,000.

[Trial Tr., Doc. 198, at 151:10–12]. "[T]he highest valuation of the property involved that is attested to at trial on behalf of the property owner" was therefore $200,000.00. 28 U.S.C. § 2412(d)(2)(H); *see Land Situated in Detroit*, 633 F.3d at 422 ("[T]he prevailing party determination is based solely on values testified to in court[.] (citation omitted)). The jury's

---

[4] https://www.tned.uscourts.gov/sites/tned/files/guidelines.pdf.

award of $169,612.50 was closer to Mr. Crook's valuation of $144,225.00 than it was to Mr. Bonneville's valuation of $200,000.00, and Ms. Fritts is therefore not the prevailing party. 28 U.S.C. § 2412(d)(2)(H).

Although Ms. Fritts now argues that Magistrate Judge Poplin "erred in using a value of *compensation* in determining the prevailing party instead of instead of the '*valuation* of the property,'" [Def.'s Objs., Doc. 227, at 8 (emphasis added)], Ms. Fritts overlooks the fact that just compensation is a function of a property's value, *see United States ex rel. TVA v. 1.72 Acres in Tenn.*, 821 F.3d 742, 756 (6th Cir. 2016) ("[T]he correct measure of compensation for an easement, as for any partial taking, is the difference in *fair market value* of the whole tract before and after the taking." (emphasis added) (quoting *United States ex rel. TVA v. Easements and Right-of-Way over 6 Acres*, 117 F. App'x 422, 423 (6th Cir. 2004)). And Mr. Bonneville testified that he arrived at his figure of just compensation by valuing the subject property—i.e., by taking the difference between the before-taking value and the after-taking value of the property. [Trial Tr., Doc. 198, at 136:19–25, 150:22–25, 151:1–9]. In determining which party qualifies as the prevailing party, Magistrate Judge Poplin therefore did not err by relying on Mr. Bonneville's testimony that $200,000.00 in *compensation* was "the highest valuation of the property . . . attested to at trial on behalf of the property owner." 28 U.S.C. § 2412(d)(2)(H).

Ms. Fritts, however, also contends that $195,000.00, and not $200,000.00, was Mr. Bonneville's true measure of compensation and that she is the prevailing party because the jury's award of $169,612.50 was the exact midpoint between Mr. Bonneville's appraisal of $195,000.00 and Mr. Crook's appraisal of $144,225.00, [Def.'s Objs., Doc. 227, at 10]; *see Land Situated in Detroit*, 633 F.3d at 422 ("If the award is exactly half-way between the valuations, the landowner is the prevailing party."), but the testimony during trial belies this

contention. During cross-examination, Mr. Bonneville rejected the view that $195,000.00 was his opinion of just compensation, emphasized that he had rounded up by $5,000.00 and arrived at $200,000.00 as his opinion of just compensation, and stated that "it is common for appraisers to round . . . to numbers that are more realistic of what would happen in the market." [Trial Tr., Doc. 198, at 165:22–25, 166:1–12]. And, during trial, Ms. Fritts herself acknowledged that "[o]ur expert offered before value, after value, and a number of $200,000.00." [Trial Tr., Doc. 199, at 200:1–2]. Even if Mr. Bonneville attested to both figures, the EAJA looks to the highest valuation attested to on the property owner's behalf, and $200,000.00 is the higher of the two. 28 U.S.C. § 2412(d)(2)(H). The trial testimony therefore establishes that $200,000.00, and not $195,000.00, was "the highest valuation of the property . . . attested to at trial on behalf of the property owner." *Id.* The Court finds no error in Magistrate Judge Poplin's conclusion that $200,000.00 is the highest valuation of the property on Ms. Fritts's behalf or in her conclusion that Ms. Fritts is not the prevailing party.

**B. Substantial Justification**

Even if Ms. Fritts were the prevailing party, she would still not be entitled to fees and other expenses because the United States's position in this litigation was substantially justified under the EAJA. *See* 28 U.S.C. § 2412(d)(1)(A) ("[A] court shall award to a prevailing party other than the United States fees and other expenses . . . unless the court finds that the position of the United States was substantially justified[.]"). The hallmark of substantial justification is reasonableness, *United States ex rel. Wall v. Circle C Constr., LLC*, 868 F.3d 466, 470 (6th Cir. 2017), which means the United States's position in this case must be "justified to a degree that could satisfy a reasonable person," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). In this case—a condemnation action—the sole dispute between the parties was the appropriate amount

of just compensation for the taking of Ms. Fritts's property. The United States, which has the burden of establishing substantial justification, *Griffith v. Comm'r of Soc. Sec.*, 987 F.3d 556, 563 (6th Cir. 2021), must therefore show that its position on the issue of just compensation was "justified to a degree that could satisfy a reasonable person," *Pierce*, 487 U.S. at 565.

In evaluating substantial justification, the Supreme Court has considered certain factors like "objective indicia consisting of the views expressed by other courts on the merits of the Government's position" and "the merits of the Government's litigating position." *Pierce*, 487 U.S. at 569. But these factors are largely unhelpful in a condemnation action because no two takings are the same and no two pieces of land are the same, so no other court has had occasion to express its view on the appropriate amount of just compensation for the taking of Ms. Fritts's property. Nor would any court be in a position to comment on the merits of just compensation in a condemnation action because it is a jury question. *See United States v.6.24 Acres*, No. 95–3183, 1996 WL 607162, at *2 (6th Cir. Oct. 22, 1996) ("Weighing evidence in a condemnation proceeding is left to the trier of fact[.]"); *United States v. 0.376 Acres*, 838 F.2d 819, 828 (6th Cir. 1988) (Krupansky, J., concurring) ("In a condemnation trial, the ultimate factual issue of determining fair market value of any given parcel of real estate is submitted to the trier of fact, which fact finder, after having had the opportunity of assigning credibility and weighing the testimony of the expert witnesses presented by the adversary parties to the action, determines that value."). As this Court has said before, "the central issue [in a condemnation action]—that of just compensation—is a battle of the experts," *United States v. Easements & Rights-of-Way over 5.82 Acres*, No. 3:24-CV-00080-DCLC-DCP, 2025 WL 3034982, at *3 (E.D. Tenn. Oct. 30, 2025) (citations omitted), so expert testimony at trial should play a meaningful role in any determination of substantial justification in a condemnation action.

The Sixth Circuit, however, has not yet addressed how district courts should determine whether the United States's position in a condemnation action is substantially justified under the EAJA, and in the absence of Sixth Circuit precedent, Magistrate Judge Poplin turned to persuasive authority, relying on *United States v. Certain Land Situated in the City of Detroit*, 600 F. Supp. 2d 880 (E.D. Mich. 2009).[5] In that case, the United States District Court for the Eastern District of Michigan adopted the standard for "making the substantial justification determination" that the Eighth Circuit Court of Appeals espoused in *United States v. 1,378.65 Acres of Land Situated in Vernon County*, 794 F.2d 1313 (8th Cir. 1986):

> If the government's appraisers are qualified or the other evidence of valuation is sufficient, the government's prelitigation position or offer is substantially justified if it is based upon and consistent with the appraisals or other evidence of valuation. Similarly, the government's litigation position is substantially justified if the amount established by the government during trial is based upon and consistent with the appraisals or other evidence of valuation. The district court should focus upon the relationship between the government's offer, the appraisals, and the valuations established by the government's expert witnesses during trial, rather than the relationship between the government's offer or deposit and the property owner's counteroffer, if any, or the jury award.

*Land Situated in Detroit*, 600 F. Supp. 2d at 896 (quoting *Vernon County*, 794 F.2d at 1317). In adopting the Eighth Circuit's standard from *Vernon County*, the United States District Court for the Eastern District of Michigan stated that the Sixth Circuit had "endorsed" this standard in *United States v. 0.376 Acres*, 838 F.2d 819 (6th Cir. 1988).

But in *0.376 Acres*—a condemnation action in which the Sixth Circuit affirmed the district court's determination that the government met its burden of showing substantial

[5] Under a de novo standard of review, the Court has license to affirm Magistrate Judge Poplin's report and recommendation on grounds other than those on which she relied. *Cf. Campbell v. BNSF Ry. Co.*, 600 F.3d 667, 677 (6th Cir. 2010) (stating that, under a de novo standard of review, "we may affirm on any grounds supported by the record even if different from the reasons [below]" (quotation omitted)); *see* 28 U.S.C. § 636(b)(1) (permitting the district court to "accept, reject, *or modify*, in whole or in part, the findings or recommendations made by the magistrate judge" (emphasis added)).

justification under the EAJA—the Sixth Circuit made no mention of this specific standard from *Vernon County*. Although the Sixth Circuit did cite *Vernon County* throughout its opinion in *0.376 Acres*, it never expressly endorsed *Vernon County*, and, in fact, it said that it declined to "endorse every word" in *Vernon County* and rejected the government's argument to adopt a standard of substantial justification "in keeping with" *Vernon County*. *0.376 Acres*, 838 F.2d at 825, 826. The Sixth Circuit recognized that it had "not yet spoken authoritatively on the test for determining whether the government's position is substantially justified" in condemnation actions, and it refused to adopt any specific standard. *Id.* at 826–27. Instead, it emphasized that the question of substantial justification is one of reasonableness. *Id.* at 827.

The Sixth Circuit, however, found portions of *Vernon County* to be "instructive on the question whether the position taken by the government in the case at bar was or was not substantially justified." *Id.* at 825. Namely, the Sixth Circuit homed in on the Eighth Circuit's analysis of the midpoint between the property owner's and the government's valuations of the property in *Vernon County* and on how much the award of just compensation departed from the midpoint. *Id.* In this vein, the Sixth Circuit observed that in *Vernon County* the property owner's expert valued the property at $485,000.00, that the government's expert valued the property at $115,000.00, that the midpoint between the two was $300,000.00, and that the commissioners' award of just compensation of $325,000.00 exceeded that midpoint by about eight percent. *Id.* This eight-percent discrepancy was not large enough for the Eighth Circuit to conclude that the government's expert's appraisal was "so out of line with the outcome of the litigation" as to be substantially unjustified. *Id.* (quoting *Vernon County*, 794 F.2d at 1318). Applying a similar approach to "the case at bar" in *0.376 Acres*, the Sixth Circuit noted that the commissioners' award of just compensation exceeded the midpoint by about four percent,

less than the eight-percent margin in *Vernon County*, and the Sixth Circuit held that "[t]he district court's conclusion as to the justification for the position taken by the government was eminently sound" because the government's expert's appraisal was "far from 'outrageous'" and "not clearly indefensible." *Id.* at 826–27.[6]

In Ms. Fritts's case, Mr. Bonneville's appraisal at trial was $200,000.00, Mr. Crook's appraisal at trial was $144,225.00, the midpoint between the two is $172,112.50, and the jury's award of just compensation of $169,612.50 did not exceed the midpoint *at all*. And even if the Court uses $195,000.00 as Mr. Bonneville's appraisal, as Ms. Fritts asks the Court to do, the midpoint would be $169,612.50 and the jury's award of just compensation of $169,612.50 *still* would not have exceeded the midpoint *at all*. Under either valuation, the jury's award did not exceed the midpoint, so Mr. Crook's appraisal was "far from 'outrageous,'" was "not clearly indefensible," and was substantially justified. *0.376 Acres*, 838 F.2d at 826–27. The Court therefore concludes, as Magistrate Judge Poplin did, that the United States has satisfied its burden of establishing that its position was substantially justified under the EAJA, and none of Ms. Fritts's arguments compel a different conclusion.

**C. Bad Faith**

Finally, Ms. Fritts argues that the United States is liable for fees and expenses under § 2412(b) of the EAJA because the United States, in various ways, acted in bad faith during the course of this litigation. [Def.'s Objs., Doc. 227, at 18; Def.'s Mem., Doc. 205, at 11–17]. Section 2412(b) provides that "[t]he United States shall be liable for such fees and expenses to the same extent that any other party would be liable *under the common law* or under the terms

---

[6] The United States, in its response in opposition to Ms. Fritts's motion, relied on *0.376 Acres* and argued that "[t]he Government's position in an eminent domain action is substantially justified where 'the position taken by the government's appraiser . . . [is] far from 'outrageous.'" [United States's Resp., Doc. 211, at 8 (quoting *0.376 Acres*, 838 F.2d at 826–27)].

of any statute which specifically provides for such an award." 28 U.S.C. § 2412(b) (emphasis added). Relying on this statutory language, Ms. Fritts seeks fees and expenses under "[t]he common law." [Def.'s Mem., Doc. 205, at 11].

Again, under the American Rule, parties pay their own attorneys' fees, but under the common law's bad-faith exception, the Court has the inherent power "to award attorneys' fees where the opposing party has acted in bad faith." *Bergman v. United States*, 844 F.2d 353, 355 (6th Cir. 1988). This power to award fees and expenses under the bad-faith exception "come[s] not from rule or statute but from 'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Stalley v. Methodist Healthcare*, 517 F.3d 911, 920 (6th Cir. 2008) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)); *see Hall v. Cole,* 412 U.S. 1, 4–5 (1973) (acknowledging the "traditional American rule" but recognizing, as an exception to this rule, that "federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require"). Section 2412(b) "essentially applies the[] common-law bad faith . . . exception[] to the government." *Gate Guard Servs., L.P. v. Perez*, 792 F.3d 554, 559 (5th Cir. 2015) (citation omitted).

Ms. Fritts complains that Magistrate Judge Poplin did not address her argument that she is entitled to fees and expenses under the common-law principle that governs bad faith. *See* [Def.'s Objs., Doc. 227, at 19 (asserting that "[t]he Magistrate fails to reach a finding related to Section 2412(b) of the EAJA")]. While the United States appears to agree that Magistrate Judge Poplin failed to address this argument, it maintains that she was correct not to address it because Ms. Fritts is not the prevailing party. *See* [United States's Resp., Doc. 231, at 9 (arguing that Magistrate Judge Poplin "correctly declined to address Defendant's allegations of bad faith")]. This Court can and will address this argument in the first instance. *See* 28

U.S.C. § 636(b)(1) (authorizing the district court to "accept, reject, *or modify*, in whole or in part, the findings or recommendations made by the magistrate judge" (emphasis added)).

The Court agrees with the United States's contention that Ms. Fritts is not entitled to fees and expenses for the United States's alleged bad faith under § 2412(b) because she is not the prevailing party. Section 2412(b)'s plain language states that "the prevailing party" may recover fees and other expenses under the common law. 28 U.S.C. § 2412(b). And likewise, under the common law, courts recognize that only a prevailing party may move for an award of fees and expenses in response to a party's bad-faith conduct. *See Stalley*, 517 F.3d at 920 (stating that an "award[] [of] attorney's fees [is] to *the prevailing party* under the 'bad faith exception'" (emphasis added) (citation omitted)); *Ray A. Scharer & Co. v. Plabell Rubber Prods., Inc.*, 858 F.2d 317, 320 (6th Cir. 1988) (observing that the bad-faith exception gives courts the authority to circumvent the "normal rule" that fees are "generally not available to *the prevailing party* in the absence of statutory authorization" (emphasis added) (citations omitted)); *see also Bergman*, 844 F.2d at 357 (stating that "a court may award fees when *the losing party* has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" (emphasis added) (internal quotation marks omitted) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975))). Indeed, Ms. Fritts acknowledges that "[t]he common law allows a court to assess attorney's fees against *a losing party* that has acted in bad faith." [Def.'s Mem., Doc. 205, at 11 (emphasis added) (internal quotation mark omitted)]. Ms. Fritts is not the prevailing party and the United States is not the losing party, for all the reasons the Court has stated, so Ms. Fritts is not entitled to an award of fees and expenses under the bad-faith exception.

But even if Ms. Fritts were the prevailing party, she would not be entitled to fees and expenses because she fails to show that the United States acted in bad faith. "Because an award of fees under the EAJA for bad faith is extraordinary and punitive, a 'stringent standard' must be met to justify the award," *Griffin Indus., Inc. v. U.S. EPA*, 640 F.3d 683, 685 (6th Cir. 2011) (citation omitted)); *see Gate Guard Servs.*, 792 F.3d at 561 ("[T]he bad faith exception is very narrow." (citation omitted)), and the movant under the bad-faith exception shoulders a "heavy burden," *Shepard & Assocs., Inc. v. Lokring Tech., LLC*, No. 24-3348, 2025 WL 1420931, at *4 (6th Cir. May 16, 2025); *see United States v. Ford*, 737 F.2d 1506, 1509 (9th Cir. 1984) (stating that "the burden of proof was on the prevailing party to show the government acted in bad faith"); *Prince v. Colvin*, 94 F. Supp. 3d 787, 794 (N.D. Tex. 2015) (stating that the movant "bears the 'burden of showing bad faith on the part of the [agency] in order to justify an award of attorneys' fees under 28 U.S.C. § 2412(b)'" (alteration in original) (quotation omitted)). To discharge this burden, Ms. Fritts, as the claimant of bad faith, must show "(1) that the position advanced or maintained by [the United States] was meritless, (2) that the meritlessness was known to the [the United States], and (3) that the position was advanced or maintained for an improper purpose, such as harassment." *Griffin Indus.*, 640 F.3d at 685–86 (citations omitted).

Ms. Fritts neither cites nor presents argument under any of these three elements, and the Court finds no support for finding as much in the record before it. She does not argue that the United States's position in this condemnation action was meritless. She does not argue that the United States knew its position was meritless. And she does not argue that the United States condemned Ms. Fritts's property for the purpose of harassing her rather than for a legitimate public purpose. *See Kohl v. United States*, 91 U.S. 367, 368 (1875); *see also Proprietors of Charles River Bridge v. Proprietors of Warren Bridge*, 36 U.S. 420, 641 (1837) ("The right

of eminent domain is usually understood to be the ultimate right of the sovereign power to appropriate . . . property of all citizens within the territorial sovereignty[] to public purposes." (Story, J., dissenting) (second alteration added)); *Ill. Cent. R.R. Co. v. TVA*, 445 F.2d 308, 313 (6th Cir. 1971) ("[A] taking by condemnation is for a public purpose if 'Congress authorized the Authority to acquire, hold, and use the lands to carry out the purposes of the T.V.A. Act.'" (quotation omitted)). Because Ms. Fritts has failed to cite or argue under the relevant legal standard, she has not shown that the United States acted in bad faith, and she is therefore not entitled to fees and expenses under § 2412(b). *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation omitted)).

## IV. Conclusion

Having conducted a de novo review of the record, the Court agrees with Magistrate Judge Poplin's recommendations. Ms. Fritts's objections [Doc. 227] to Magistrate Judge Poplin's report and recommendation [Doc. 220] are therefore **OVERRULED**, and the report and recommendation [Doc. 220] is **ACCEPTED** as supplemented and modified by this Memorandum Opinion and Order. For the reasons in the report and recommendation, and for the reasons in this Memorandum Opinion and Order, Ms. Fritts's Motion for Costs, Attorney Fees, and Expenses [Doc. 204] is **DENIED** to the extent that she seeks fees and other expenses under 28 U.S.C. § 2412(b) and (d).

**SO ORDERED:**

s/Clifton L. Corker
United States District Judge